UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| TERRANCE J. FEASTER, | : | Case No. 1:22-cv-313 |
| Plaintiff, | : | |
| vs. | : | District Judge Michael R. Barrett |
| | : | Magistrate Judge Karen L. Litkovitz |
| ANNETTE CHAMBERS-SMITH, *et al.*, | : | |
| Defendants. | : | |

**ORDER and**
**REPORT AND RECOMMENDATION**

Plaintiff, an inmate currently incarcerated at the Ohio State Penitentiary, in Youngstown, Ohio, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights when he was incarcerated at the Southern Ohio Correctional Facility (SOCF), in Lucasville, Ohio. By separate Order, plaintiff has been granted leave to proceed *in forma pauperis*.

This matter is now before the Court for a s*ua sponte* review of plaintiff's amended complaint (Doc. 5) to determine whether the amended complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).[1] This matter is also before the Court on plaintiff's December 7, 2022 Notice of

---

[1] Plaintiff's original complaint named 44 defendants and consisted of a form complaint, with a single-spaced attachment that was 53 pages long. Following the Court's Deficiency Order, citing violations of Fed. R. Civ. P. 8(a), plaintiff filed the instant amended complaint. (Doc. 5). Plaintiff's amended complaint supersedes the original complaint and is the operative complaint in this matter. *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all purposes.") (quotation and citation omitted).

Exhibits (Doc. 9), which the Court understands to be a motion to attach the exhibits to his amended complaint. The Court **GRANTS** the motion to the extent that the exhibits will be considered with the amended complaint. *Cf. Jackson v. United States*, No. 19-cv-3560, 2019 WL 4034731, at *1 n.2 (E.D. Pa. Aug. 27, 2019).[2] The motion (Doc. 9) is **DENIED** in all other respects.

### Screening of Amended Complaint

A. **Legal Standard**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is

---

[2] Pursuant to Federal Rule of Civil Procedure 10, these exhibits are considered a part of the amended complaint "for all purposes." *See* Fed. R. Civ. P. 10(c). *Cf., Fishman v. Williams*, No. CV 14-4823 MWF(JC), 2016 WL 11484591, at *7 (C.D. Cal. Sept. 21, 2016) ("When screening a *pro se* plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court may consider facts drawn from the complaint and supporting exhibits attached thereto."); *Johnson v. Buffalo Pub. Schools: Adult Educ. Div.*, No. 19-CV-1484 (JLS), 2021 WL 9455714, at *3 (W.D.N.Y. Jan. 7, 2021) ("The Court deems the attachments and exhibits attached to Johnson's Complaint part of the pleading and considers them, to the extent they are relevant, in its screening decision."). However, the Court declines to comb through the record to raise new claims or make legal arguments for plaintiff. *Cf. Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("Furthermore, although this court has discretion to more broadly review the record on appeal, we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it.").

immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S.

at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

    **B.**    **Plaintiff's Amended Complaint**

Plaintiff's amended complaint names the following nineteen defendants: Ohio Department of Rehabilitation and Correction (ODRC) Director Annette Chambers-Smith, former SOCF Warden Ronald T. Erdos, SOCF Deputy Warden of Operations Cynthia Davis, SOCF Deputy Warden Larry Greene, Ohio State Highway Patrol Trooper Clinginpeel, SOCF Investigator Fred Denny, SOCF Captains James Whitman and Phillip Frazie, SOCF Lieutenants Robert Setty and J. Kinner, SOCF Sergeant Bryan Barney, SOCF Corrections Officers B. Crank, J. Stevenson, W. Jewell, C. Justice, and T. Wellman, SOCF Nurse Sammons, "CPS" Charles O'Connor, and SOCF Mental Health Administrator Sharon Salyers. Plaintiff states that he is suing all defendants in their individual capacities. (*See* Doc. 5, at PageID 81).

Liberally construing the amended complaint, the Court understands it to raise the following seven groups of claims.

    **a.**    **Claims against Defendants Chambers-Smith and Erdos**

Plaintiff alleges that defendants Chambers-Smith and Erdos failed to process and properly respond to complaints and grievances and to hold SOCF staff accountable for allegedly retaliatory and harassing conduct. Plaintiff blames this alleged failure to act for the purported violations of his rights. Plaintiff additionally asserts that Erdos failed to ensure that ODRC rules and procedures were being followed at disciplinary hearings and abused his power by approving plaintiff's placement for a year in Extended Restrictive Housing (ERH), where plaintiff alleges

that he was housed in "extreme and deplorable cells for . . . extended periods of time." (Doc. 5, at PageID 81-84).

b.     **Claims against Defendant Crank**

Plaintiff alleges that on November 24, 2021, defendant Crank, together with an unidentified "superior officer" and another corrections officer named Merrit, who are not named as defendants,[3] refused without explanation to let plaintiff out of his cell to go to the library. Plaintiff alleges that he informed Crank that he would be filing a complaint, which plaintiff allegedly filed on November 26, 2021, while Crank was on a scheduled off day. When Crank returned to work on November 27, 2021, he allegedly told other prisoners in the housing block that plaintiff had filed a complaint against him.[4]

Plaintiff alleges that he "sens[ed] some type of retaliation" and decided not to attend recreation that evening, even though he had signed up for it and even though not going to recreation would mean a loss of shower privileges. Plaintiff alleges that while other prisoners were at recreation, the door to his cell opened and officers asked over the loudspeaker if he wanted his shower. Plaintiff alleges that when he left his cell to take a shower, another inmate yelled that Crank was in his cell. Plaintiff purportedly yelled from the shower, "That's retaliation Crank." Plaintiff asserts that Crank then exited the cell with a wet piece of paper and, moments later, plaintiff was escorted to Restrictive Housing (RH).

Plaintiff asserts that at a later disciplinary hearing he was informed that he had been placed in RH based on a Conduct Report written by Crank for drug possession. Plaintiff alleges

---

[3]To the extent that plaintiff asserts claims against non-defendants, such claims are subject to dismissal.
[4]In a document filed as an exhibit to the amended complaint, an inmate who purportedly lived in the cell next to plaintiff at the time of the underlying events avers that he heard Crank complain about plaintiff filing a complaint and that Crank said he was going "to get [plaintiff] . . . out of his block . . . by any means necessary." (Doc. 9-1, at PageID 117).

5

that he was placed in a "stronghold cell," which had two reinforced steel doors that remained sealed twenty-four hours a day and was generally reserved for extremely violent and unruly prisoners.

Plaintiff alleges that on December 1, 2021, he became "overwhelmed" and "at times disoriented," and placed himself on suicide watch to "escape the dangerous . . . conditions of the cell," which he allegedly had been told was "red tagged . . . for no apparent cause." According to plaintiff, the cell had "black colored mold on the doors and wall," "ca[k]ed up semen on the left rear wall," "cor[rosion] and rust on the bed," a toilet that was "cor[roded] with feces and waste," a ventilation duct that "was covered with an unknown toxic material and mold," and a sink with cold water only.  (Doc. 5, at PageID 85-88).

### c. Claims against Defendant Salyers

Plaintiff alleges that on December 3, 2021, he was told by unidentified officers in RH that he was being taken off "constant [suicide]" watch.  Plaintiff claims that he did not agree to being taken off constant watch.  He alleges that defendant Salyers tried to lure him from the constant-watch cell by saying that she wanted to speak with him in her office and later in the "strip out" cage.  Plaintiff alleges that he requested to speak with Salyers at the cell front because her requests failed to follow mental health policies and procedures.  Plaintiff alleges that Salyers told an unidentified captain that plaintiff was to "come off watch," which plaintiff claims led to him being beaten and assaulted by staff.  (Doc. 5, at PageID 89-90).

### d. Claims against Defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers, and Sammons

Plaintiff alleges that on December 3, 2021, after Salyers left his cell front, defendant Frazie authorized defendant Setty and two others to go to plaintiff's cell.  Plaintiff alleges that Setty and the two others arrived with "O.C. [pepper]" spray and a video camera.  Plaintiff alleges

6

that he agreed to come off suicide watch if he was moved from the stronghold cell. Plaintiff further alleges that his request was denied, and Setty deployed three bursts of O.C. spray through the crack of the cell door while plaintiff tried to block the spray with the suicide blanket. Plaintiff alleges that prior to being sprayed he yelled "'ODRC Policy 64-DCM-01' Protection from harm" and stated, "I will kill myself." Plaintiff alleges that the three corrections officers left briefly and returned with a five-man "SRT [Special Response Team]" team.

Plaintiff alleges that neither Setty nor the cameraman participated in the cell assault, which investigators labelled a "cell extraction." Plaintiff alleges, however, that he saw defendant Kinner with a shield. Plaintiff claims that Kinner is known "as an officer who has allegedly assaulted other prisoners." Plaintiff states that he turned his back, waiting for an order to "cuff up." According to plaintiff, the order never came. Instead, he allegedly heard the cell door open and Kinner yell, "stop resisting" even though plaintiff claims that he was not resisting. Plaintiff alleges that Kinner forced him to the back of the cell using the shield and "smashed" plaintiff against the wall. Plaintiff claims that he asked to be allowed to get on the ground to be cuffed and shackled. Plaintiff alleges that once he was on his stomach and cuffed, defendant Justice "began raining down punches and blows to the plaintiff's head," defendant Stevenson "began twisting the plaintiff's thumbs and fingers," and "officers still yelled 'stop resisting.'" Plaintiff claims that defendant Wellman dragged him backwards, causing his suicide gown to come off. Plaintiff claims that defendant Jewell began twisting plaintiff's right leg and defendant Stevenson began violently banging plaintiff's head against the floor. Plaintiff asserts that when he was pulled to his feet he was "naked, bruised, bloody, and battered." Plaintiff further states that an unknown officer continued to twist and bend plaintiff's fingers. Plaintiff alleges that he

7

was then escorted to the strip cage, where he was assessed by defendant Salyers. When Salyers inquired if he was still suicidal, plaintiff responded, "Yes."

Plaintiff claims that defendant Nurse Sammons failed to conduct a proper medical exam or to note plaintiff's injuries. Plaintiff alleges that he complained of a broken finger, but it was never examined. Plaintiff claims that he was then escorted back to the same stronghold cell that he complained about without being able to make a statement in violation of ODRC policy. (Doc. 5, at PageID 90-95).

### e. Claims against Defendants Whitman and Barney

Plaintiff alleges that defendants Whitman and Barney from the Rules Infraction Board (RIB) presided at the hearing on his Conduct Report from Crank. Plaintiff states that Whitman and Barney failed to follow ODRC procedures and immediately terminated the hearing when plaintiff asserted that Crank had issued the Conduct Report in retaliation for plaintiff filing a grievance against him. Plaintiff alleges that by terminating the hearing, Whitman and Barney also "cancelled out" his chance to defend himself against the use-of-force incident. Additionally, plaintiff alleges that Whitman and Barney refused to issue disposition and appeal forms until plaintiff filed a grievance. Plaintiff states that his appeals were ultimately unsuccessful. (Doc. 5, at PageID 96-97).

### f. Claims against Defendants Davis, Denny, and Clinginpeel

Plaintiff alleges that defendants Davis, Denny, and Clinginpeel failed to properly investigate the December 3, 2021 use-of-force incident and, as a result, his injuries allegedly went untreated. (Doc. 5, at PageID 95-96).

>    g.   **Claims against Defendants Greene and O'Connor**

Plaintiff asserts that defendants Greene and O'Connor effectively failed to act by affirming the allegedly false claims against plaintiff, resulting in his remaining in ERH. (Doc. 5, at PageID 98).

Plaintiff seeks monetary and injunctive relief. (Doc. 5, at PageID 99).

## ANALYSIS

Based on the above allegations, plaintiff asserts that he is bringing claims under the First, Fifth, Eighth, and Fourteenth Amendments. (Doc. 5, at PageID 99). At this stage in the proceedings, without the benefit of briefing by the parties, the undersigned concludes that plaintiff's First Amendment retaliation claim against defendant Crank and plaintiff's Eighth Amendment claims against defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers, and Sammons related to the alleged events of December 3, 2021, may proceed at this juncture. However, the remainder of plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

First, plaintiff's claims against defendants Chambers-Smith and Erdos are subject to dismissal. Plaintiff seeks to hold these defendants liable for failure to take corrective action. (*See* Doc. 5, at PageID 81-84). Section 1983 liability, however, is premised on active unconstitutional behavior and not a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The mere fact that these defendants allegedly failed to take corrective action in response to grievances is insufficient to impose liability under § 1983. Moreover, to the extent that plaintiff seeks to hold these defendants liable for failing to process his grievances, plaintiff's allegations also fail to state a claim upon which relief may be granted. "Prison inmates do not have a constitutionally

9

protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug. 03, 1998) (citations omitted). Likewise, to the extent that plaintiff names Chambers-Smith or Erdos as defendants based on their supervisory positions, *respondeat superior* does not apply to § 1983 claims and may not serve as a basis for liability. *See Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Plaintiff's allegations that Erdos approved his placement in ERH for a year are also insufficient to state a constitutional claim. Plaintiff does not have a constitutional right to any specific housing assignment, and courts have found that placement in ERH for a year is not atypical or significant. *See Cook v. Davis*, No. 1:19-CV-624, 2019 WL 4564741, at *4 (S.D. Ohio Sept. 20, 2019) (Report & Recommendation) (finding the plaintiff's retention in ERH for twelve months did not implicate the Due Process Clause), *adopted*, 2020 WL 3057845 (S.D. Ohio June 9, 2020); *Wheeler v. Pickaway Corr. Inst.*, No. 2:19-CV-3512, 2019 WL 4744781, at *4 (S.D. Ohio Sept. 30, 2019); *Hairston v. Smith*, No. 2:18-CV-826, 2018 WL 4599905, at *4 (S.D. Ohio Sept. 25, 2018) (Report & Recommendation), *adopted*, 2018 WL 5268747 (S.D. Ohio Oct. 23, 2018). *See also Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (stating that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original). *Cf. Wilkinson v. Austin,* 545

U.S. 209, 223–24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates). Because plaintiff has not alleged facts showing that his time in disciplinary segregation was indefinite or excessively long in duration, *see Joseph*, 410 F. App'x at 868, or that it otherwise imposed the kind of "atypical and significant" hardships found in *Wilkinson*, 545 U.S. at 223-24, his Fourteenth Amendment due process claim against Erdos should be dismissed.

Additionally, to the extent that plaintiff seeks to raise an Eighth Amendment claim against Erdos regarding the alleged conditions of the "stronghold cell," such claims are subject to dismissal. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff has failed to allege that Erdos was aware of the allegedly unsanitary conditions in the "stronghold cell." Rather, plaintiff alleges that Erdos "witnessed" him in the separate, suicide cell (Doc. 5, at PageID 84), the conditions of which plaintiff does not challenge.[5]

Nor does plaintiff allege a claim upon which relief may be granted against Erdos or any other defendant to the extent that he asserts that SOCF staff failed to follow prison procedures. "Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574, 576 (citing *Olim v. Wakinekona*, 461 U.S. 238,

---

[5] In any event, plaintiff does not allege that the purported conditions of the "stronghold cell" would have been observable from outside of the cell.

11

250 (1983)). *Cf. Donohue v. Diggs*, No. 7:11CV00090, 2011 WL 795889, at *4 (W.D. Va. Mar. 1, 2011) ("To the extent that prison officials failed to comply with prison procedural regulations during disciplinary proceedings, such violations of state law do not give rise to federal due process claims. . . . Similarly, they are not independently actionable under § 1983.").

Next, although the Court has allowed plaintiff's First Amendment retaliation claim to proceed against Crank at this juncture, any Eighth Amendment claim against Crank related to the alleged conditions of the stronghold cell in which plaintiff was housed following Crank's issuing plaintiff a Conduct Report would fail to state a claim upon which relief could be granted. *See Farmer*, 511 U.S. at 837. Plaintiff has failed to allege that Crank was aware of the allegedly unsanitary conditions in the cell, or that he had any involvement in the alleged events after issuing the Conduct Report.

Plaintiff has likewise failed to state a plausible Fourteenth Amendment due process claim against defendant Crank in connection with the allegedly false Conduct Report. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr,* No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Id.* at *2 (citing *Sandin v. Conner,* 515 U.S. 472, 485 (1995)). Plaintiff's allegations are insufficient to trigger constitutional concerns in this case because, for the reasons discussed in addressing plaintiff's claims against defendant Erdos, the challenged disciplinary actions did not amount to a deprivation of a constitutionally protected liberty interest. *See Joseph*, 410 F. App'x

at 868. It also follows that because plaintiff does not have a protected liberty interest under the circumstances alleged herein, plaintiff's claims against Barney and Whitman relating to the subsequent RIB proceedings are subject to dismissal.

Nor has plaintiff stated a Fifth Amendment due process claim. "The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay Cty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Because plaintiff brings his due process claims against state actors, the claims are properly considered under the Fourteenth Amendment—not the Fifth Amendment. *See id.* Plaintiff's Fifth Amendment due process claims should therefore be dismissed.

Additionally, plaintiff has failed to state a claim upon which relief may be granted against defendants Davis, Denny, and Clinginpeel. Plaintiff seeks to hold these defendants liable for their failure to investigate his claims or take corrective action relative to the alleged December 3, 2021 use-of-force incident. (Doc. 5, at PageID 97-98). "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011).

Finally, plaintiff's claims that defendants Greene and O'Connor failed to act by affirming the allegedly false disciplinary violations against him are subject to dismissal. Section 1983 liability is not premised on a mere failure to act. *See Greene*, 310 F.3d at 899; *Shehee*, 199 F.3d at 300. Further, plaintiff did not have a liberty interest in remaining free from disciplinary segregation. *See Joseph*, 410 F. App'x at 868. These claims should therefore be dismissed.

Accordingly, in sum, plaintiff may proceed at this juncture with his First Amendment retaliation claim against defendant Crank and his Eighth Amendment claims against defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers, and Sammons related to the alleged events of December 3, 2021. The remainder of plaintiff's claims, however, should be dismissed with prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## IT IS THEREFORE RECOMMENDED THAT:

Plaintiff's claims be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted **with the exception of** his First Amendment retaliation claim against defendant Crank and his Eighth Amendment claims against defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers, and Sammons related to the alleged events of December 3, 2021. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff may proceed at this juncture with his First Amendment retaliation claim against defendant Crank and his Eighth Amendment claims against defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers, and Sammons related to the events of December 3, 2021.

2. The United States Marshal shall serve a copy of the amended complaint, summons, the separate Order issued granting the plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon defendants Crank, Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers, and Nurse Sammons.

3. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for

consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

4. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

## PROCEDURE ON OBJECTIONS:

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

December 17, 2022

KAREN L. LITKOVITZ
United States Magistrate Judge