IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **TERRANCE J. FEASTER,** | : | |
| | : | Case No. 1:22-cv-313 |
| **Plaintiff,** | : | |
| | : | **Judge Michael R. Barrett** |
| v. | : | |
| | : | **Magistrate Judge Karen L. Litkovitz** |
| **ANNETTE CHAMBERS-SMITH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' AND INTERESTED PARTY STATE OF OHIO'S MOTION TO DISMISS AND RESPONSE TO PLAINTIFF'S MOTION FOR REPLY [DOC. 30]**

NOW COME Defendants, Annette Chambers-Smith, Travis Wellman, Robert Setty, Corey Sammons, Carl Justice, Joshua Kinner, Sharon Salyers and Interested Party State of Ohio[1] (Defendants), by and through undersigned counsel, and hereby respectfully move this Court to dismiss Plaintiff's amended complaint [Doc. 5] pursuant to Civ. R. 12(b)(6). A Memorandum in Support of this Motion is attached.

---

[1] Under R.C. § 109.361, the Ohio Attorney General may appear in any civil action in order to protect the interest of the State even though no request for appearance has been made by the officer or employee. Such appearance does not waive personal service and any defenses available at law.  Here, defendants Crank and Jewell have not yet requested representation through the Ohio Attorney General's Office. Moreover, summonses for Stevenson and Frazie were returned unexecuted. The Ohio Attorney General's Office could be statutorily obligated to represent them. This constitutes the State's interest.

1

>Respectfully Submitted,
>
>DAVE YOST (0056290)
>Ohio Attorney General
>
>/s/*Andrew Gatti*
>ANDREW GATTI (0086854)
>Senior Assistant Attorney General
>Criminal Justice Section
>Corrections Litigation Unit
>30 E. Broad Street, 23rd Floor
>Columbus, Ohio 43215
>Phone: (614) 644-7233 / Fax:(855) 665-2568
>Andrew.Gatti@OhioAGO.gov
>
>*Counsel for Defendants*

## MEMORANDUM IN SUPPORT

**I.   INTRODUCTION AND FACTS**

Plaintiff Terrence Feaster #551-840 is currently an inmate housed at the Ohio State Penitentiary. On June 2, 2022, Plaintiff filed a civil rights lawsuit under 42 U.S.C. § 1983 in the Southern District of Ohio for an incident that occurred while he was incarcerated at the Southern Ohio Correctional Facility (SOCF). Plaintiff is suing the Ohio Department of Rehabilitation and Correction (ODRC) Director Annette Chambers-Smith, former SOCF Warden Ronald Erdos and sixteen (16) other employees of SOCF and an Ohio State Highway Patrol Trooper. Plaintiff's complaint outlines seven groups of claims against various state employees at different times alleging several constitutional violations. [See Doc. 5].

The Court performed an initial screening pursuant to the Prison Litigation Reform Act. On December 19, 2022, this Court issued its Report and Recommendation dismissing the majority of claims and the majority of defendants. [See Doc. 12]. After careful analysis, this Court concluded that the Plaintiff may proceed with his "First Amendment retaliation claim against defendant Crank

2

and his Eighth Amendment claims against Defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers and Sammons related to the events of December 3, 2021." [Doc. 12, PageID# 275].

Unsatisfied with the screening process, Plaintiff filed a timely objection to the Report and Recommendation. [Doc. 14]. On March 29, 2023, Plaintiff requested the clerk to issue an entry of default against Defendants. [Doc. 19]. Defendants replied in opposition and this Court denied Plaintiff's request. [Docs. 21, 23]. On May 25, 2023, Plaintiff filed a motion requesting this Court to order Defendants to respond to his amended complaint. [Doc. 30]. In his motion, Plaintiff asks the Court to "again consider all attached exhibits in this instant case." [Doc. 30, PageID# 375]. As Plaintiff's statement is clearly an adoption of all previously filed exhibits in this case, Defendants respond by filing the above captioned *Motion to Dismiss*.

## II.     LAW AND ARGUMENT

### A.     Legal Standard – Fed. R. Civ. P. 12(b)(6)

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rules authorize dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court of the United States has interpreted Rule 8(a) to mean that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation to provide the grounds for his claimed entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A complaint must contain "enough facts to state a claim to relief that is plausible on its face," meaning it must nudge the claims "across the line from conceivable to plausible." *Id*. at 570.

3

In expanding upon *Twombly*'s "facial plausibility" test, the Supreme Court has held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the pleading standard announced in *Twombly* does not require "detailed factual allegations," it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Naked assertions devoid of further factual enhancement" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (internal quotation marks omitted).

While pro se pleadings must be liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (affirming dismissal of inmate's access to courts claim for failing to allege any specific prejudice). Although factual allegations are to be accepted as true, a court does not have to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. In the context of civil rights actions, "conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim." *Harden-Bay v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) (quoting *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)).

To establish liability under § 1983, a plaintiff must plead that a defendant is personally responsible for the unconstitutional actions which injured him. *Balderson v. Mohr*, No. 2:12-CV-235, 2012 U.S. Dist. LEXIS 60567, at *2 (S.D. Ohio May 1, 2012); see also *Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."); *Murphy v. Grenier*,

4

406 F. App'x 972 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). The collective acts of multiple defendants cannot be ascribed to an individual defendant; the plaintiff must state a plausible constitutional violation against each defendant. See *Reilly v. Vadlamudi*, No. 11-1251, 2012 U.S. App. LEXIS 10614, at *10 (6th Cir. 2012) (citing *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011)); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government- official defendant, through the official's own individual actions, has violated the Constitution."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) ("[A] complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976))). Further, "[o]n the other hand, because a document attached to a pleading becomes a part of that pleading, the decision attached to the Complaint may be considered for purposes of the Motion to Dismiss." See Fed. R. Civ. P. 10(c); *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir.2007). *Lane v. Wexford Health Sources*, S.D.Ohio No. 2:10-cv-389, 2010 U.S. Dist. LEXIS 120318, at *9 (Aug. 16, 2010).

      1.      **First Amendment Retaliation Claim against Defendant Crank**

To prevail on his retaliation claim, Plaintiff must establish (1) that he was engaged in constitutionally protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the Defendant's alleged retaliatory conduct. *See Smith v. Campbell,* 250 F.3d

5

1032, 1037 (6th Cir.2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

Generally, filing grievances against prison officials is protected conduct. However, if those grievances lack merit it could call into question the protected conduct. While "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf, ... [t]his right is protected, however, only if the grievances are not frivolous." *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but 'only to the extent that the underlying claims ha[ve] merit." *Id*.

Here, Plaintiff claims he was retaliated against by Defendant Crank because he told him he was going to file a complaint against him. [Doc. 5, PageID# 85]. Plaintiff alleges that while Defendant Crank was off he filed that complaint and when Defendant Crank returned, Plaintiff's cell was searched in retaliation. *Id* at 86. However, an analysis of Plaintiff's now adopted exhibits, showed that Defendant Crank was conducting a routine cell search of Plaintiff's cell and he discovered drugs and drug paraphilia. [Doc. 9-1, PageID# 137]. The items found in Plaintiff cell were, "verified it was K2." [Doc. 9-1, PageID# 134]. Plaintiff was charged with institutional rule violations and his appeals were confirmed. [Doc. 9-1, PageID# 136]. Because Plaintiff was not engaged in protected conduct, his retaliation claim against Defendant Crank must fail.

> 2. **Eighth Amendment Claims against Defendants Frazie, Setty, Kinner, Stevenson, Justice, Wellman, Salyers, and Sammons**

The Eighth Amendment prohibition on cruel and unusual punishment protects prison inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Accordingly, a

6

prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley*, 475 U.S. at 327.

When a prison official is accused of using excessive force, the core judicial inquiry has both a subjective and objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). The subjective component focuses on the prison official's state of mind, and whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In making this inquiry, the Court must consider several factors: the threat reasonably perceived by the responsible official, the need for the use of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *Combs*, 315 F.3d at 556-57; *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321.

On the other hand, the objective component of an Eighth Amendment excessive force claim requires that a plaintiff's injury or pain be "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580; *Williams*, 631 F.3d at 383. As the Supreme Court of the United States has stated, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10; *Rafferty v. Trumbull Cty.*, 915 F.3d 1087, 1094 (6th Cir. 2019). Rather, the Eighth Amendment protects prisoners only from that conduct which is "repugnant to the conscience of mankind" and excludes "de minimis uses of physical force." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting *Hudson*, 503 U.S. at 9-10). In addition, this Court has recognized how the Sixth Circuit gives deference to prison officials using force in maintaining institutional discipline and security. See, e.g., *Anderson v. Lawless*, S.D. Ohio No. 2:17-cv-1057, 2017 U.S. Dist. LEXIS 209814, at *17 (Dec. 21, 2017) (citing *Combs*, 315 F.3d at

7

556-57). On occasion, the maintenance of prison security and discipline may require that inmates be subjected to physical contacts actionable as assault under the common law. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs*, 315 F.3d at 557.

Here, Plaintiff fails both the objective and subjective components to his excessive force claim against Defendants. Plaintiff fails the objective component because his injury was not, "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580; *Williams*, 631 F.3d at 383. Notwithstanding Plaintiff's claim of a broken finger, Plaintiff's medical examination after the use of force found, "movement was noted to all extremities and digits … no edema, no discoloration noted to sight, no injuries noted to patient, no treatment." [Doc. 9-1, PageID# 167]. Thus, Plaintiff failed to plead a, "'sufficiently serious'" injury as required for an Eighth Amendment violation. *Cordell*, 759 F.3d at 580.

Similarly, Plaintiff fails on the subjective component of his excessive force claim as the force applied was not, "maliciously and sadistically [applied] to cause harm." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Plaintiff admits in his amended complaint that his suicidal ideations were a ruse to be removed from what he considered a dirty cell. [Doc. 5, PageID# 91]. As part of the ruse, he claimed he was going to "kill himself" so he could be put "on watch" and removed from his dirty cell. *Id*. Apparently, his ruse was discovered and a clinical decision was made to return Plaintiff to his cell. [Doc. 9-1, PageID# 167]. When ordered to leave the suicide cell by Defendant Setty, Plaintiff refused. [Doc.

8

9-1, PageID# 192]. When the institution called in someone to negotiate with Plaintiff, he refused. *Id*. When Oleoresin capsicum spray was deployed to remove Plaintiff, he refused. *Id*. Finally, a five (5) man team was used to finally extract Plaintiff from the suicide cell. *Id*. Remarkedly, Plaintiff was finally removed from the suicide cell with no injuries. [Doc. 9-1, PageID# 167]. Plaintiff was refusing direct orders from Defendants and they responded every refusal with slight increases in force to gain compliance from Plaintiff. The force employed by Defendants was, "needed to preserve internal order and discipline and to maintain institutional security." *Combs*, 315 F.3d at 557. Thus, the force was not, "maliciously and sadistically [applied] to cause harm." *Id*. at 556. Plaintiff failed to plead the subjective component of an excessive force claim and therefore his claim should be dismissed.

    B.  *Heck* and the "Favorable Termination Rule"

  Plaintiff's allegations against Defendants should be dismissed because if the claims are successful, it would necessarily imply the invalidity of his disciplinary conviction, which would be in violation of the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny. It is clear from the amended complaint and the recently adopted exhibits that the above captioned matter Plaintiff is attempted to collaterally attack his institutional convictions.

  In *Heck*, after the plaintiff was convicted of voluntary manslaughter, and during the pendency of his criminal appeal, he filed a civil suit under 42 U.S.C. § 1983 against two prosecutors and the investigator who worked to convict him. The plaintiff sought monetary damages (and not injunctive relief from his sentence) for the destruction of evidence, an "unlawful" investigation, and allowing certain inappropriate evidence to be used in his criminal trial. *Id* at 479. In upholding the dismissal of the action, the Court held:

9

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 486–87. The Court went on define the inquiry as:

> [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id*. at 487. In subsequent decisions, the Court extended this "favorable termination rule" to rulings in a prison-administration process. See *Edwards v. Balisok*, 520 U.S. 641 (1997); *Muhammad v. Close*, 540 U.S. 749 (2004) (describing the extension of the *Heck* doctrine in *Edwards*); see also *Orange v. Ellis*, 348 F. App'x 69 (5th Cir. 2009) ("Until [the plaintiff] can show that his disciplinary charges have been overturned, the court cannot redress the excessive force claim under Section 1983.").

Similarly, in applying the *Heck* standard, the Sixth Circuit Court of Appeals has upheld the dismissal of cases where an inmate was convicted of a prison infraction. In *Jennings v. Mitchell*, 93 F. App'x 723 (6th Cir. 2004), the court considered whether the trial court's granting of the defendants' motion for summary judgment was appropriate. The plaintiff alleged that he was subjected to cruel and unusual punishment during his incarceration when two corrections officers sprayed him with a chemical agent for refusing to exit a shower. *Id* at 724. The plaintiff was convicted of misconduct in a disciplinary hearing for disobeying a direct order. *Id*. at 725. In upholding the grant of summary judgment to the defendants in light of the *Heck* doctrine, the Sixth

Circuit stated "[a] prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction. Because a favorable ruling on [plaintiff]'s Eighth Amendment claim would imply the invalidity of his disciplinary conviction, this claim is not cognizable." *Id*. (citing *Huey v. Stine*, 230 F.3d 226, 230–31 (6th Cir. 2000); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)).

In applying the favorable-termination rule in another prisoner case, the Sixth Circuit concluded that the district court properly granted summary judgment for the defendants on the plaintiff's Eighth Amendment claim, which arose from an alleged assault for which the plaintiff received a major misconduct violation. *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003). The Denham Court stated:

> Since granting Denham his requested relief would call into question the validity of his disciplinary conviction, his Eighth Amendment claim is not cognizable under § 1983. A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction.

*Id*.; accord *Bell v. Wilkinson*, 145 F. App'x 169, 170 (6th Cir. 2005) ("Bell [can] not challenge the decision of the prison's Rules Infraction Board under § 1983 unless the Board's decision is overturned.").

Similarly, this Honorable Court has previously applied the favorable-termination rule to bar a § 1983 claim after a plaintiff was found guilty at a disciplinary hearing. See, e.g., *Trawick v. Sakmar*, No. 4:13CV00201, 2013 U.S. Dist. LEXIS 61585, at *11 (N.D. Ohio Apr. 30, 2013) ("Because a favorable ruling on Plaintiff's Eighth Amendment claim would imply the invalidity of his disciplinary conviction, his claim is not cognizable."). Other courts in this Circuit have ruled similarly when applying *Heck* and its progeny. See *Thompson v. Joseph*, No. 1:12-cv-992, 2014 U.S. Dist. LEXIS 59240, at *31 (S.D. Ohio Apr. 29, 2014) (applying *Heck* to bar a use of force

claim pursuant to plaintiff's RIB conviction); *Beckham v. Keaton*, Civil Action No. 14-CV-159-HRW, 2015 U.S. Dist. LEXIS 29736, at *14 (E.D. Ky. Mar. 10, 2015) ("If [the plaintiff] were to succeed on those First Amendment retaliation claims in this § 1983 action, he would thus necessarily invalidate the EKCC's disciplinary determination under which he was found guilty of improper conduct and through which he lost his GTC."); *Mink v. Meko*, Civil Action No. 13-CV-023-HRW, 2013 U.S. Dist. LEXIS 35503, at *6 (E.D. Ky. Mar. 12, 2013) ("In this case, an adjudication in [the plaintiff]'s favor would undermine the validity of his prison disciplinary convictions, and his complaint is therefore premature."); *McNair v. Clark*, No. 11-274-GFVT, 2013 U.S. Dist. LEXIS 18663, at *7 (E.D. Ky. Feb. 12, 2013) ("Because these allegations, if true, would necessarily imply that his May 8, 2011 disciplinary conviction for assault is invalid, *Edwards* prevents their assertion until McNair has obtained a reversal of that disciplinary conviction through appropriate proceedings in habeas corpus."); *Mitchell v. City of Ypsilanti*, No. 06-11547, 2007 U.S. Dist. LEXIS 56575, at *13 (E.D. Mich. Aug. 3, 2007) ("Specifically, any claim of excessive force relative to this incident is precluded by *Heck*. Mitchell was convicted of resisting or obstructing a police officer and that conviction is inextricably intertwined with any claim of excessive force.").

Both of Plaintiff's remaining claims stem from Rules Infraction Broad convictions. These convictions were appealed and upheld. [Doc. 9-1, PageID# 134-141]. Plaintiff's retaliation claim against Defendant Crank is meritless because it was confirmed he had K2 in his cell. [Doc. 9-1, PageID# 134]. Similarly, Plaintiff's excessive force claim against the remaining Defendants is baseless as he suffered no injury and Defendants used the appropriate amount for force needed to gain compliance over Plaintiff. It is clear that this lawsuit is nothing more than a baseless attack on Plaintiff's RIB convictions and should be dismissed.

### C. Defendants are entitled to Qualified Immunity

Qualified immunity is available to state officials sued in their individual capacities under 42 U.S.C. § 1983. The doctrine provides governmental officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). Thus, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Through the use of qualified immunity, the law shields "government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting Anderson, 483 U.S. at 638). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006); McCloud v. Testa, 97 F.3d 1536, 1542 (6th Cir. 1996).

Thus, in determining whether a defendant is entitled to qualified immunity, two questions must be asked: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). And second, "was the right clearly established at the time of the violation?" *Id*. If the answer to both is "yes," government officials are protected by the doctrine of qualified immunity. See *Id*.

In this case, Plaintiff's allegations, even construed in the light most favorable to him, fail to demonstrate a genuine factual dispute as to whether a constitutional violation occurred. Plaintiff

13

cannot show that Defendants took any actions that violated a clearly established constitutional right of which they should have known. Accordingly, the Defendants are entitled to qualified immunity and a dismissal of the amended complaint is warranted.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/Andrew Gatti*
ANDREW GATTI (0086854)
Senior Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
Phone: (614) 644-7233 / Fax: (855) 665-2568
Andrew.Gatti@OhioAGO.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed on June 13, 2023, and served upon Plaintiff, via U.S. mail, postage prepaid at the below address.

Terrance Feaster (551-840)
Ohio State Penitentiary
878 Coitsville-Hubbard Road
Youngstown, OH 44505

*/s/Andrew Gatti*
ANDREW GATTI
Senior Assistant Attorney General