## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| TERRANCE J. FEASTER, | : | Case No. 1:22-cv-313 |
| | : | District Judge Michael R. Barrett |
| Plaintiff, | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| vs. | : | |
| | : | |
| ANNETTE CHAMBERS-SMITH, *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at the Ohio State Penitentiary in Youngstown, Ohio, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while incarcerated at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio. In its December 19, 2022 Order and Report and Recommendation, the Court ordered that plaintiff could proceed with his First Amendment retaliation claim against defendant SOCF corrections officer B. Crank and his Eighth Amendment claims against defendants SOCF captain Phillip Frazie; SOCF lieutenants Robert Setty and Joshua Kinner; SOCF corrections officers J. Stevenson, Carl Justice, W. Jewell, and Travis Wellman; SOCF mental health administrator Sharon Salyers; and SOCF nurse Corey Sammons. (Doc. 12 at PAGEID 275).

Defendants Wellman, Setty, Sammons, Justice, Kinner, and Salyers—along with Ohio Department of Rehabilitation and Correction Director Annette Chambers-Smith and the State of

Ohio as an interested party[1]—have filed a motion to dismiss plaintiff's amended complaint. (Doc. 32).  Plaintiff filed a response in opposition, to which defendants replied.  (Docs. 39, 41).[2]

## I.     Background

The Court summarized the allegations of plaintiff's amended complaint in its prior Report and Recommendation (Doc. 12).  The Court restates that summary here in relevant part.

### A.  Defendant Crank

Plaintiff alleges that on November 24, 2021, defendant Crank, together with an unidentified "superior officer" and another corrections officer named Merrit, who are not named as defendants, refused without explanation to let plaintiff out of his cell to go to the library.  Plaintiff alleges that he informed Crank that he would be filing a complaint, which plaintiff allegedly filed on November 26, 2021, while Crank was on a scheduled off day.  When Crank returned to work on November 27, 2021, he allegedly told other prisoners in the housing block that plaintiff had filed a complaint against him.

Plaintiff alleges that he "sens[ed] some type of retaliation" and decided not to attend recreation that evening, even though he had signed up for it and even though not going to recreation would mean a loss of shower privileges.  Plaintiff alleges that while other prisoners were at recreation, the door to his cell opened and officers asked over the loudspeaker if he wanted his shower.  Plaintiff alleges that when he left his cell to take a shower, another inmate yelled that Crank was in his cell.  Plaintiff purportedly yelled from the shower, "That's retaliation Crank."  Plaintiff asserts that Crank then exited the cell with a wet piece of paper and, moments later, plaintiff was escorted to Restrictive Housing (RH).

Plaintiff asserts that at a later disciplinary hearing he was informed that he had been placed in RH based on a Conduct Report written by Crank for drug possession.  Plaintiff alleges that he was placed in a "stronghold cell," which had two reinforced steel doors that remained sealed twenty-four hours a day and was generally reserved for extremely violent and unruly prisoners.

---

[1] The Ohio Attorney General (OAG) may be obligated under Ohio law to represent defendants Crank and Jewell, but they have not yet requested such representation.  (Doc. 32 at PAGEID 393 n.1).  Defendants Stevenson and Frazie were served on June 23 and 26, 2023, respectively, as reflected in a return of service filed August 3, 2023 (*see* Doc. 40), but the Court does not know whether they have requested OAG representation.

[2] Also pending is plaintiff's "Motion for Reply or Answer" (Doc. 30), which was filed in response to the Court's May 2, 2023 Order denying plaintiff's request for an entry of default (Doc. 23).  Defendants' motion to dismiss is also captioned as a response to this motion.  (*See* Doc. 32).  The Court finds that defendants' motion to dismiss moots plaintiff's motion.  *See* Fed. R. Civ. P. 12(b) ("A motion asserting [the failure to state a claim upon which relief can be granted] must be made before pleading. . . .").

Plaintiff alleges that on December 1, 2021, he became "overwhelmed" and "at times disoriented," and placed himself on suicide watch to "escape the dangerous . . . conditions of the cell," which he allegedly had been told was "red tagged . . . for no apparent cause." According to plaintiff, the cell had "black colored mold on the doors and wall," "ca[k]ed up semen on the left rear wall," "cor[rosion] and rust on the bed," a toilet that was "cor[roded] with feces and waste," a ventilation duct that "was covered with an unknown toxic material and mold," and a sink with cold water only. (Doc. 5, at PAGEID 85-88).

(Doc. 12 at PAGEID 266-67) (footnotes omitted).

B. <u>Defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Saylers, and Sammons</u>

Plaintiff alleges that on December 3, 2021, he was told by unidentified officers in RH that he was being taken off "constant [suicide]" watch. Plaintiff claims that he did not agree to being taken off constant watch. He alleges that defendant Salyers tried to lure him from the constant-watch cell by saying that she wanted to speak with him in her office and later in the "strip out" cage. Plaintiff alleges that he requested to speak with Salyers at the cell front because her requests failed to follow mental health policies and procedures. Plaintiff alleges that Salyers told an unidentified captain that plaintiff was to "come off watch," which plaintiff claims led to him being beaten and assaulted by staff. (Doc. 5, at PageID 89-90). . . . .

Plaintiff alleges that on December 3, 2021, after Salyers left his cell front, defendant Frazie authorized defendant Setty and two others to go to plaintiff's cell. Plaintiff alleges that Setty and the two others arrived with "O.C. [pepper]" spray and a video camera. Plaintiff alleges that he agreed to come off suicide watch if he was moved from the stronghold cell. Plaintiff further alleges that his request was denied, and Setty deployed three bursts of O.C. spray through the crack of the cell door while plaintiff tried to block the spray with the suicide blanket. Plaintiff alleges that prior to being sprayed he yelled "'ODRC Policy 64-DCM-01' Protection from harm" and stated, "I will kill myself." Plaintiff alleges that the three corrections officers left briefly and returned with a five-man "SRT [Special Response Team]" team.

Plaintiff alleges that neither Setty nor the cameraman participated in the cell assault, which investigators labelled a "cell extraction." Plaintiff alleges, however, that he saw defendant Kinner with a shield. Plaintiff claims that Kinner is known "as an officer who has allegedly assaulted other prisoners." Plaintiff states that he turned his back, waiting for an order to "cuff up." According to plaintiff, the order never came. Instead, he allegedly heard the cell door open and Kinner yell, "stop resisting" even though plaintiff claims that he was not resisting. Plaintiff alleges that Kinner forced him to the back of the cell using the shield and "smashed" plaintiff against the wall. Plaintiff claims that he asked to be allowed

3

to get on the ground to be cuffed and shackled.  Plaintiff alleges that once he was on his stomach and cuffed, defendant Justice "began raining down punches and blows to the plaintiff's head," defendant Stevenson "began twisting the plaintiff's thumbs and fingers," and "officers still yelled 'stop resisting.'"  Plaintiff claims that defendant Wellman dragged him backwards, causing his suicide gown to come off.  Plaintiff claims that defendant Jewell began twisting plaintiff's right leg and defendant Stevenson began violently banging plaintiff's head against the floor.  Plaintiff asserts that when he was pulled to his feet he was "naked, bruised, bloody, and battered."  Plaintiff further states that an unknown officer continued to twist and bend plaintiff's fingers.  Plaintiff alleges that he was then escorted to the strip cage, where he was assessed by defendant Salyers.  When Salyers inquired if he was still suicidal, plaintiff responded, "Yes."

Plaintiff claims that defendant Nurse Sammons failed to conduct a proper medical exam or to note plaintiff's injuries.  Plaintiff alleges that he complained of a broken finger, but it was never examined.  Plaintiff claims that he was then escorted back to the same stronghold cell that he complained about without being able to make a statement in violation of ODRC policy.  (Doc. 5, at PAGEID 90-95).

(*Id.* at PAGEID 267-69).

### C. Plaintiff's exhibits

The Court previously granted plaintiff's motion requesting that the Court consider the exhibits attached to document number 9 as part of his amended complaint.  (*See* Doc. 12 at PAGEID 263).  As relevant to plaintiff's retaliation claim, there is a summary of his November 26, 2021 informal complaint regarding SOCF officers' denial of his library access.  (Doc. 9-1 at PAGEID 116).  There is the declaration of plaintiff's cell neighbor, which states that defendant Crank said on November 27, 2021 that plaintiff had "filed a complaint on him . . . and he was going to get [plaintiff] out of his block . . . by any means nec[ess]ary."  (*Id.* at PAGEID 117).  There is defendant Crank's November 27, 2021 conduct report, in which defendant Crank details his "routine shakedown" of plaintiff's cell on that date that produced contraband and evidence of an attempt to procure contraband on that date.  (*Id.* at PAGEID 137).  There is the Rules

Infraction Board's (RIB's) decision affirming the hearing officer's determination that plaintiff

violated an associated prison rule under the following circumstances:

> [Defendant] Crank was conducting a shakedown on [plaintiff] and found a piece
> of soaked paper with 2 roaches and small pieces of white paper commonly known
> as K2.  Drug confirmation form verified it was K2.  The reason for the delay in
> this case was the drug confirmation form from the investigator and he was on
> constant watch status.  Inmate had to be removed from RIB due to his behavior
> and aggressive attitude.

(*Id.* at PAGEID 134).  The warden affirmed the decision on appeal.  (*See id.* at PAGEID 133).

As relevant to plaintiff's Eight Amendment claims, exhibits to document number 9 also

include defendant Setty's December 3, 2021 conduct report, which describes the use of force

incident at issue.  (*See id.* at PAGEID 140-41).  There is also the RIB's decision affirming the

hearing officer's determination that plaintiff violated Rules 18, 20, 21, and 23 during the use of

force incident at issue:

> [Plaintiff] was taken off watch and was going to be moved to a slammer cell and
> he said he was going to go back on watch.  [Defendant] Salyers told him he would
> not be going back on watch and [defendant] Frazie authorized a 5 man team to
> extract [plaintiff].  [Plaintiff] would not comply with negotiations and OC was
> administered in an attempt to get him to come out of his cell and he would not
> comply.  The SRT entered the cell and did extract [plaintiff] and moved him to
> J2-01.  [Plaintiff] was removed from RIB due to the fact he refused to comply
> with the RIB process.

(*Id.* at PAGEID 138).  The warden affirmed the decision on appeal.  (*Id.* at PAGEID 136).

## II.    Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual

allegations as true and make reasonable inferences in favor of the non-moving party.  *Keys v.*

*Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575

(6th Cir. 2005)).  Only "a short and plain statement of the claim showing that the pleader is

entitled to relief" is required.  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  Nevertheless, the complaint

5

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

A complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). At the same time, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III. Arguments

6

Defendants argue that plaintiff's First Amendment retaliation claim against defendant Crank must fail. Defendants point to the RIB's disposition related to defendant Crank's cell search and the Warden's affirmance thereof as demonstrating that defendant Crank's cell search was "routine" and resulted in the discovery of drugs and drug paraphernalia. (Doc. 32 at PAGEID 398, referring to Doc. 9-1 at PAGEID 133-34, 137). As such, defendants argue that plaintiff was "not engaged in protected conduct. . . ." (Doc. 32 at PAGEID 398).

With respect to plaintiff's Eighth Amendment claims, defendants argue that plaintiff's injury was not sufficiently serious to meet the objective component of his excessive force claim. Defendants argue that the institutional inspector's disposition of the related grievance establishes that he suffered "no injuries" and needed "no treatment." (*Id.* at PAGEID 400, referring to Doc. 9-1 at PAGEID 167). Defendants further argue that plaintiff has failed to allege the subjective component of his excessive force claim. Defendants again point to the disposition of plaintiff's related grievance, which states that "DR. Virginia" made a "clinical decision" to take plaintiff off suicide observation. (*Id.*). Defendants also point to the Use of Force investigation, which concluded that plaintiff failed to comply with various orders from various SOCF staff. (*Id.* at PAGEID 400-01, referring to Doc. 9-1 at PAGEID 192).

Defendants next argue that plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny because success thereon would necessarily imply the invalidity of his RIB convictions (*see* Doc. 9-1 at PAGEID 133-41). Finally, defendants argue that they are entitled to qualified immunity.

In response, plaintiff argues that his First Amendment retaliation claim is premised on protected conduct: a valid grievance related to his law library access. With respect to his Eighth Amendment claims, plaintiff agues that defendants' actions were malicious and sadistic, and his alleged injuries included a severe beating, which is sufficient to meet the objective component of

7

the claim.  Plaintiff seems to argue that the *Heck* doctrine is not applicable because his RIB convictions were imposed without due process.  Finally, plaintiff argues that qualified immunity is not warranted because defendants knew or should have known that their conduct violated the Constitution.

In reply, defendants argue that plaintiff "never suggests [the exhibits to document number 9, with the exception of defendant Crank's conduct report,] are falsified, thus adopting them for their truth."  (Doc. 41 at PAGEID 453).  If these exhibits are adopted as true, defendants reason, plaintiff's claims must fail because they show that defendant Crank did not have a retaliatory motive when he searched plaintiff's cell and filed the conduct report, and defendants used force against plaintiff in a good faith to maintain or restore discipline.  Defendants further argue that defendant Crank's cell search did not rise to the level of adverse action for purposes of plaintiff's First Amendment retaliation claim.  Finally, defendants argue that plaintiff "concedes he was disobeying Defendants' orders" in his response.  (Doc. 41 at PAGEID 454).[3]

### IV.    Analysis

#### A.  Plaintiff's exhibits

Defendants' arguments depend to a considerable extent on their position that plaintiff has admitted as true the contents of each exhibit to document number 9 (with the exception of defendant Crank's conduct report (Doc. 9-1 at PAGEID 137)).  (*See* Doc. 41 at PAGEID 453).  The Court finds this position unwarranted.  The Court granted plaintiff's request to have the exhibits to document number 9 "be *considered with* the amended complaint."  (Doc. 12 at PAGEID 263) (emphasis added).  *See Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020) ("[T]he court primarily considers the allegations in the complaint, although . . .

---

[3] Defendants point to plaintiff's response, generally, as supporting this contention but do not cite any particular statement by plaintiff therein.

8

exhibits attached to the complaint[] also *may be taken into account*.") (emphasis added) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  The Court, however, does not understand plaintiff to have requested anything more—i.e., that the exhibits *and their contents* be adopted as fact.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) ("Rule 10(c) 'does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact.'") (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454-56 (7th Cir. 1998)).[4]  Such a conclusion would also run contrary to the Court's obligation to construe plaintiff's pleadings liberally.  *See Erickson*, 551 U.S. at 94.  The Court therefore should not find that plaintiff has adopted as true the entire contents of the exhibits attached to document number 9.

    B.  *Heck*

    *Heck* does not bar plaintiff's claims in this case.  In *Heck*, the U.S. Supreme Court held that "in order to recover damages for . . . other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. at 486-87 (footnote omitted).  *Heck* is not automatically invoked by a suit that impacts a conviction in a prison disciplinary proceeding,

---

[4] The Court acknowledges that in some cases, where the underlying claim depends entirely on the contents of a document attached to the complaint, the attached document should trump a contrary allegation in a complaint.  *See, e.g.*, *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 539 (6th Cir. 2012) ("[T]he district court was not obliged to accept as true the allegations in Williams's complaint in the face of the clear language in the Payoff Statement, and could properly conclude that CitiMortgage's Payoff Statement was not fraudulent or misleading as a matter of law.").  The Court finds the circumstances at bar distinguishable.

however, absent evidence that the disciplinary conviction affected the fact or duration of a prisoner's underlying sentence.  *See Muhammad v. Close*, 540 U.S. 749, 751-52 (2004) (per curiam).  The Supreme Court explained in *Muhammad* that "[t]he assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules."  *Id.* at 751 n.1. The Supreme Court subsequently concluded that the term "sentence" as used in *Heck* referred to "substantive determinations as to the length of confinement."  *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005).  Thus, where success in a prisoner's § 1983 action would not necessarily affect the duration of his underlying sentence or imply immediate or speedier release from confinement, the action is not barred by *Heck* and its progeny.  *Id.* at 82; *Taylor v. Lantange*, 418 F. App'x 408, 412 (6th Cir. 2011) (the voiding of a disciplinary proceeding, which would present a cleaner record before the parole board, does not implicate *Heck* because the parole board still retains complete discretion over whether or not to parole the prisoner); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (same).

In the instant case, the amended complaint does not allege that plaintiff's RIB convictions impacted the duration of his confinement, only the conditions thereof; plaintiff was placed in Extended Restrictive Housing (ERH) for one year.  (*See* Doc. 5 at PAGEID 84; Doc. 9-1 at PAGEID 119-22).  Though defendants cite a series of cases for the proposition that *Heck* bars § 1983 claims that implicate the validity of disciplinary proceedings, they fail to address whether plaintiff's RIB convictions impacted the duration of his confinement.[5]  Therefore, any collateral

---

[5] Another Court in this District has explained why the three Sixth Circuit decisions cited by defendants, *Denham v. Shroad*, 56 F. App'x 692 (2003),  *Jennings v. Mitchell*, 93 F. App'x 723 (6th Cir. 2004), and *Huey v. Stine*, 230 F.3d 226 (6th Cir. 2000), do not compel a different result:

attack on the RIB convictions through this lawsuit does not necessarily imply that plaintiff's

continued confinement or imprisonment is invalid. Defendants' argument that plaintiff's claims

are *Heck*-barred should therefore be rejected.

### C. First Amendment retaliation

The following elements comprise a First Amendment retaliation claim:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken
> against the plaintiff that would deter a person of ordinary firmness from
> continuing to engage in that conduct; and (3) there is a causal connection between
> elements one and two—that is, the adverse action was motivated at least in part
> by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d

378, 394 (6th Cir. 1999)). Inmates have the "right to file 'non-frivolous grievances against

prison officials on [their] own behalf, whether written or oral." *Id.* at 265 (citations omitted).

Defendants argue that plaintiff was not engaged in protected conduct because the exhibits

submitted in support of plaintiff's amended complaint demonstrate that defendant Crank's cell

search was routine and undisputedly yielded contraband. This argument, however,

misunderstands the protected conduct alleged by plaintiff. The grievance forming the basis for

plaintiff's retaliation claim related to defendant Crank's denial of plaintiff's library privileges.[6]

(*See* Doc. 5 at PAGEID 85-86; Doc. 9-1 at PAGEID 116). At this stage in the proceedings,

---

Defendants also rely upon two other unreported cases from the Sixth Circuit, [*Denham* and
*Jennings*]. In both cases, the Sixth Circuit relied upon its earlier holding in *Huey* to conclude that
the inmate's § 1983 was *Heck*-barred because it would call into question the validity of his
disciplinary conviction without consideration of whether the disciplinary convictions impacted the
inmate's sentence. As discussed above, however, in *Muhammad*, the Supreme Court expressly
overruled *Huey*'s holding that *Heck* applies categorically to all suits challenging prison
disciplinary proceedings. Thus, the Undersigned concludes that Defendants' reliance upon
*Jennings* and *Denham* [is] misplaced.

*Pullen v. Howard*, No. 2:14-cv-104, 2016 WL 4764894, at *11 n.4 (S.D. Ohio Sept. 13, 2016), *report and
recommendation adopted sub nom. Pullen v. C/O Lisa Howard*, 2017 WL 44855 (S.D. Ohio Jan. 3, 2017).
[6] Defendants appear to acknowledge this oversight in their reply brief—switching focus to the second element of
plaintiff's retaliation claim and arguing for the first time that plaintiff did not sufficiently allege adverse action by
defendant Crank.

nothing in the amended complaint or supporting exhibits demonstrates plaintiff's grievance was frivolous (nor do defendants appear to argue as much).  As such, plaintiff has sufficiently alleged that he engaged in protected conduct for purposes of element one of his retaliation claim.

Defendants also argue that because plaintiff has endorsed the truth of the contents the RIB disposition, which states that defendant Crank found verified illegal drugs in plaintiff's cell, plaintiff's protected conduct could not have been the cause of an adverse action for purposes of the third element of his retaliation claim; put differently, the fact that plaintiff was convicted of a prison rule violation prevents him from demonstrating the causation element of his retaliation claim.  As discussed above, however, the Court does not find that plaintiff has made such an endorsement.  Rather, at this stage of the proceedings, the Court is satisfied that plaintiff's amended complaint sufficiently alleges a causal connection between his November 26, 2021 library grievance and defendant Crank's November 27, 2021 cell search and related false conduct report.  (*See* Doc. 5 at PAGEID 85-87; Doc. 9-1 at PAGEID 117 (declaration of plaintiff's cell neighbor supporting defendant Crank's retaliatory motive)).

Finally, defendants' argument that plaintiff did not an allege adverse action by defendant Crank for purposes of the second element of the retaliation claim was raised for the first time in their reply brief, not clearly in response to any argument advanced by plaintiff in his response, and should not be considered.[7]  *Books A Million, Inc. v. H & N Enterprises, Inc.*, 140 F. Supp. 2d 846, 859 (S.D. Ohio 2001) ("It is well settled . . . that a party may not raise an issue for the first time in a reply brief.") (citing *Aetna Cas. and Sur. Co. v. Leahey Const. Co., Inc.*, 219 F.3d 519, 545 (6th Cir. 2000)).  Even if, however, the Court were to consider this argument, the Court finds

---

[7] Plaintiff states in his response that defendant Crank "retaliated by . .. fabricat[ing] and falsif[ying] what he recovered" from plaintiff's cell.  (Doc. 39 at PAGEID 437).  In reply, defendants do not address this at all and instead argue that a single cell search does not constitute adverse action.  (*See* Doc. 41 at PAGEID 453-54).

it unpersuasive. Defendants argue that a single cell search that does not result in the destruction or confiscation of property does not rise to the level of adverse action for purposes of a First Amendment retaliation claim. This ignores, however, plaintiff's allegation that defendant Crank falsified the resulting conduct report. *See Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) ("[F]alse disciplinary reports" are "adverse action that could deter a person of ordinary firmness from engaging in protected conduct.").

Based on the foregoing, plaintiff has sufficiently alleged a First Amendment retaliation claim against defendant Crank.

### D. Eighth Amendment claims[8]

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Eighth Amendment excessive force claims include both a subjective and an objective component. *Johnson v. Sootsman*, ___ F.4th ____, No. 22-1937, 2023 WL 5274516, at *4 (6th Cir. Aug. 16, 2023). The subjective component focuses on the prison official's state of mind, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). In the "use-of-force context, the

---

[8] Defendants' motion to dismiss focuses exclusively on plaintiff's excessive force claims under the Eight Amendment. (*See* Doc. 32 at PAGEID 398-401). As such, the disposition of this motion has no bearing on plaintiff's other Eighth Amendment claims.

Supreme Court has applied a more demanding subjective test but a more relaxed objective test."
*Sootsman*, 2023 WL 5274516, at *4.

The subjective intent necessary to sustain an excessive force claim goes beyond "deliberate indifference," which can suffice for inadequate medical care or conditions of confinement claims. *Id.* at *5. Instead, force must have been exerted "maliciously and sadistically to inflict pain" to be actionable under the Eighth Amendment. *Id.* (citing *Hudson*, 503 U.S. at 5-7). Force believed necessary, *even if that belief is unreasonable*, will not violate the Eighth Amendment. *Id.* (citing *Whitley*, 475 U.S. at 324). To determine intent, courts are to consider: "What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force?" *Id.* at *7 (citing *Hudson*, 503 U.S. at 7, and *Whitley*, 475 U.S. at 321). These questions underscore that force used "in a good-faith effort to maintain or restore discipline" does not violate a prisoner's Eighth Amendment rights. *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (defendant corrections officers applied force— spraying the prisoner with pepper spray—in a "good-faith effort to maintain or restore discipline, not to maliciously cause pain[,]" where the prisoner repeatedly disobeyed the officers' direct orders to "sit cross-legged on his bunk and face the wall")).

In cases concerning medical care or conditions of confinement, benchmarks for the objective inquiry include "serious" medical needs and "extreme" deprivations. *Sootsman*, 2023 WL 5274516, at *5. In excessive force cases, by contrast, "contemporary standards of decency" determine "whether specific conduct qualifies as cruel and unusual." *Id.* (quoting *Hudson*, 503 U.S. at 8). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has

14

occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm . . . , contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.* (quoting *Hudson*, 503 U.S. at 7). "Although the Eighth Amendment can reach minor injuries caused by significant force," it "does not apply to '*de minimis* uses of physical force' so long as this force does not repulse 'the conscience of mankind.'" *Sootsman*, 2023 WL 5274516, at * 5 (quoting *Hudson*, 503 U.S. at 9-10).

Defendants' arguments with respect to plaintiff's excessive force claims rely on their position that plaintiff has endorsed as true the contents of the exhibits submitted in support of his amended complaint—namely, that (1) the decision to remove plaintiff from suicide watch was based on a doctor's clinical decision, (2) defendants used force in response plaintiff's continued noncompliance with staff orders, and (3) plaintiff suffered no injuries and required no treatment following the use of force at issue. (*See* Doc. 9-1 at PAGEID 167, 192). As explained above, however, the Court does not find that plaintiff endorses the truth of the entire contents of these documents. Plaintiff alleges in his amended complaint that he was sprayed with O.C. spray, beaten severely and violently, and left naked with a broken finger and other injuries as part of his extraction from suicide watch despite mounting no resistance to defendants' commands. (*See* Doc. 5 at PAGEID 91-95). Plaintiff's amended complaint satisfies the objective component of the Eighth Amendment inquiry at this juncture. *See Williams*, 631 F.3d at 384 ("[A]llegations of

15

a violent extraction, complete with use of a chemical agent that caused some degree of injury to Petitioner, are adequate to plead that the pain inflicted was 'sufficiently serious.'").

Plaintiff has also sufficiently alleged the subjective component of an excessive force claim under the *Sootsman* factors. Regarding the extent of his injury, plaintiff alleges that he "sustained physical injuries[,]" including a broken finger, from the use-of-force incident. (*See* Doc. 5 at PAGEID 90, 95). Regarding the nature of the threat perceived by officers and whether their use of force was proportional to that threat, plaintiff alleges that he did not resist or make any noise during the use-of-force incident. (*See id.* at PAGEID 92-93). Finally, plaintiff's complaint describes an *escalation* in force by defendants—the unprovoked deploying of O.C. spray and summoning of a five-man SRT—rather than reduction. (*See id.* at PAGEID 91). Plaintiff's complaint sufficiently alleges the subjective component of an Eighth Amendment excessive force claim.

In *Pullen v. Combs*, the defendants argued (similar to defendants here) that an RIB disposition attached to the plaintiff's complaint conclusively demonstrated that a defendant had used force to maintain or restore discipline rather than maliciously or sadistically. No. 1:17-cv-255, 2018 WL 3911398, at *8 (S.D. Ohio Aug. 15, 2018), *report and recommendation adopted*, 2018 WL 4111020 (S.D. Ohio Aug. 29, 2018). The undersigned disagreed, finding that the plaintiff had sufficiently alleged the subjective component of his excessive force claim because he alleged that he was pepper sprayed unnecessarily—while naked and in the process of putting on a suicide smock. *Id.* ("The exhibit defendants rely on is not determinative of plaintiff's claim at the pleading stage. Rather, the Court construes the RIB disposition as a disputed document that cannot be considered at this juncture."). Like in *Pullen*, plaintiff's amended complaint satisfies the subjective component of the inquiry at this juncture.

16

Based on the foregoing, plaintiff has sufficiently alleged Eighth Amendment excessive force claims against defendants.

      E.  <u>Qualified immunity</u>

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (2006)).  Thus, when a defendant raises qualified immunity, the plaintiff must show that (1) "a constitutional violation has occurred" and (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Id.* (citing *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005)).  The Court may consider these elements in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity, a fact-sensitive analysis, is generally inappropriate at the motion-to-dismiss stage. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020).  But this is not an absolute rule. *Id.*  "If, taking all the facts as true and reading all inferences in the plaintiff's favor, the plaintiff has not plausibly showed a violation of his clearly established rights, then the officer-defendant is entitled to immunity from suit" at the motion-to-dismiss stage. *Id.* at 762.

As explained above, the Court concludes that plaintiff has sufficiently alleged violations of his First Amendment right to be free from retaliation and his Eighth Amendment right to be free from the excessive use of force, satisfying the first element.  At this stage of the proceedings, the Court also finds that plaintiff has sufficiently alleged the violation of clearly established rights.  Plaintiff alleges that he was retaliated against for filing a nonfrivolous grievance regarding his access to the library.  (Doc. 5 at PAGEID 85-87).  *See Maben*, 887 F.3d at 264 (quoting *Herron*, 203 F.3d at 415) ("[A]n inmate has an undisputed First Amendment

17

right to file grievances against prison officials on his own behalf."). Plaintiff alleges that he was sprayed with O.C. through the crack of the watch cell door after asking "to be moved from the stronghold cell. . . ." (Doc. 5 at PAGEID 91). *See Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) ("In *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011), we held that a prisoner stated a valid excessive-force claim when he 'allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him.'") (alteration in original). Plaintiff also alleges that he was beaten after being handcuffed and despite not resisting defendants' commands. (*Id.* at PAGEID 92-93). *See Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 540 (6th Cir. 2015) ("Under the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and nonresisting detainees, arrestees, or convicted prisoners are impermissible.") (citing *Pelfry v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995); *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002)). Accordingly, defendants are not entitled to qualified immunity at this juncture.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff's "Motion for Reply or Answer" (Doc. 30) is **DENIED as moot**.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion to dismiss (Doc. 32) be **DENIED**.

Date: September 6, 2023

Karen L. Litkovitz

KAREN L. LITKOVITZ
United States Magistrate Judge

18

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

TERRANCE J. FEASTER,            :    Case No. 1:22-cv-313
                                :    District Judge Michael R. Barrett
         Plaintiff,           :    Magistrate Judge Karen L. Litkovitz
                                :
vs.                              :
                                :
ANNETTE CHAMBERS-SMITH, *et al*.,   :
                                :
         Defendants.      :
                                :

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).