**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **TERRANCE J. FEASTER,** | : | |
| | : | Case No. 1:22-cv-313 |
| **Plaintiff,** | : | |
| | : | Judge Michael R. Barrett |
| v. | : | |
| | : | Magistrate Judge Karen L. Litkovitz |
| **ANNETTE CHAMBERS-SMITH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, Travis Wellman, Robert Setty, Corey Sammons, Carl Justice, Joshua Kinner, Sharon Salyers, Brennan Crank, William Jewell, Justin Stevenson and Phillip Frazie (Defendants), by and through undersigned counsel, and hereby oppose Terrance Feaster's (Plaintiff) Motion for Summary Judgment, and in the alternative, move this Court, pursuant to Federal Rules of Civil Procedure 56, for an order granting summary judgment in their favor on the First and Eighth Amendment claims against them. The grounds for this opposition and motion are set forth more fully in the attached memorandum.

Respectfully Submitted,

DAVE YOST (0056290)
Ohio Attorney General

/s/*Andrew Gatti*
ANDREW GATTI (0086854)
Senior Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/ (855) 665-2568
Andrew.Gatti@OhioAGO.gov

*Counsel for Defendants*

**MEMORANDUM IN SUPPORT**

I.    **INTRODUCTION**

Not only should this Court deny Plaintiff's request for summary judgment, but rather, based on the undisputed evidence attached, this Court should grant summary judgment in favor of Defendants. Defendants are Ohio Department of Rehabilitation and Correction (ODRC) employees currently assigned to the Southern Ohio Correctional Facility (SOCF). SOCF houses many of Ohio's most dangerous individuals. Plaintiff is one of those dangerous individuals and was housed at SOCF at the time giving rise to the claims alleged in this case. It is undisputed that Plaintiff was disciplined for a rule infraction; the legitimacy of the violation Plaintiff contests and was placed in a segregation cell. Unimpressed with the conditions of his accommodations, Plaintiff claimed he was suicidal and was moved to a constant watch cell. After an assessment, it was determined that Plaintiff was malingering his suicidal ideations, and he was then required to be moved from the constant watch cell back to the segregation cell. Plaintiff refused direct orders to move cells. After negotiations failed to compel Plaintiff to move cells, an extraction team was assembled to force Plaintiff's compliance with the order to move cells. The minimum force employed to gain Plaintiff's compliance served a legitimate penological interest in securing the constant watch cell for individuals who genuinely had suicidal ideations.

II.    **PROCEDURAL HISTORY**

On June 2, 2022, Plaintiff filed his initial sixty-one (61) page complaint against forty-four (44) defendants alleging twenty-six (26) different claims. [Doc. 1]. This Court ordered Plaintiff to file an amended complaint not to exceed twenty (20) pages. [Doc. 2]. Plaintiff filed an Amended Complaint on June 24, 2022, and an additional Complaint December 15, 2022. [Docs. 5, 11]. Plaintiff's December 15, 2022, Complaint [Doc. 11] is identical to the previously denied June 2,

2022, Complaint, [Doc. 1]. The Court performed its initial screening on Plaintiff's Amended Complaint [Doc. 5] and recommended dismissing a number of claims and Defendants listed within. [Doc. 12]. In the Amended Complaint the Court identified seven (7) claims against nineteen (19) defendants. [*Id*. at PageID# 265]. After careful analysis, the Court dismissed all of Plaintiff's claims with the exception of his First Amendment claim against Defendant Crank and his Eighth Amendment claim against Defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers and Sammons. [*Id*. at PageID# 275]. Plaintiff objected to the Court's analysis. [Doc. 14]. The Court denied Plaintiff's objections. [Doc. 60]. Defendants filed a motion to dismiss for failure to state a claim given Plaintiff's adoption of exhibits he submitted to the Court. [Doc. 32]. This motion was denied. [Doc. 43]. The Court issued a calendar order setting the dispositive motion deadline for June 17, 2024. [Doc. 66]. However, Plaintiff filed a dispositive motion on May 13, 2024, and the Court granted leave for Defendants to respond to Plaintiff's motion on the original dispositive motion date. [Doc. 86].

The claims the Court extricated from Plaintiff's Amended Complaint involve incidents which occurred between November 24, 2021, and December 3, 2021. [Docs. 5, 12]. Plaintiff alleges that on November 24, 2021, he was denied library access by Defendant Crank. [Doc. 12, PageID# 266]. Plaintiff stated that since he was denied library access, he threatened to "write-up" Defendant Crank, which he did on Defendant Crank's day off. *Id*. When Defendant Crank returned on November 27, 2021, Plaintiff alleges his cell was search by Defendant Crank in retaliation for the "write-up." *Id*.

As a result of the cell search conducted by Defendant Crank, Plaintiff was found in violation of institutional rules and placed in restrictive housing for drug possession. [Doc. 12, PageID# 266]. In restrictive housing, Plaintiff was placed in a stronghold cell where he deemed

3

the conditions dangerous and the accommodations unsatisfactory. Therefore, Plaintiff, "placed himself on suicidal watch to escape the dangerous and conditions (*sic*) of the cell in (R.H.)," and was removed to a constant watch cell. [Doc. 5, PageID# 88]. Plaintiff then claims that Defendant Salyers, a mental health administrator, took Plaintiff off constant which would cause him to be returned to his previous stronghold cell in contravention to the institution policy. [Doc. 5, PageID# 88-91].

After Defendant Salyers removed Plaintiff from constant watch, he was ordered out of the cell by Defendant Setty. *Id*. Plaintiff admittedly defied direct orders to come out of the constant watch cell, so Defendant Setty used Oleoresin Capsicum (OC) spray to gain Plaintiff's compliance with the direct orders. *Id*. When the OC spray did not result in Plaintiff's compliance, a five (5) man cell extraction team was employed to gain Plaintiff's compliance. [*Id.* PageID# 91-95]. Plaintiff claimed he was injured during the extraction and Defendant Sammon provided improper care. *Id*.

### III. MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

#### A. Plaintiff Fails to Meet the Requirements to Succeed on his Motion for Summary Judgment

##### 1. Standard

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to materials in the record, including depositions, documents, affidavits or declarations, stipulations, admissions, or interrogatory answers, etc. *See* Fed. R. Civ. P. 56(c). Summary judgment will not

4

lie if there is a genuine dispute about material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is 'genuine' when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dearing v. Mahlman*, No. 1:11-cv-204, 2013 U.S. Dist. LEXIS 188064, * 8 (S.D. Ohio Oct. 7, 2013) (citing *Anderson*, 477 U.S. at 248). Moreover, on a motion for summary judgment the court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing *Anderson*, 477 U.S. at 255). Also, the Court must refrain from weighing the evidence or making credibility determinations. *Lamb v. Kendrick*, 52 F.4th 286, 291 (6th Cir.2022).

Once the moving party has met its burden of production, the non-moving party cannot rest on mere allegations or denials of his pleadings, but must present "significant probative evidence in support of his complaint to defeat the motion for summary judgment." *Dearing*, 2013 U.S. Dist. LEXIS at * 8 (citing *Anderson*, 477 U.S. at 248). General averments or conclusory allegations of an affidavit, however, do not create specific fact disputes for summary judgment purposes. *Pierce v. Ohio Dept. of Rehab. and Corr.*, 284 F.Supp.2d 811, 822, (N.D. Ohio 2003) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, (1990)). Additionally, "[t]he mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party." *Dearing*, 2013 U.S. Dist. LEXIS at * 8 (citing *Anderson*, 477 U.S. at 252). Summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp v. Catrett*, 417 U.S. 317, 322 (1986); see also *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

**2.     Argument**

Plaintiff cannot demonstrate a First Amendment retaliation claim against Defendant Crank. To prevail on his retaliation claim, Plaintiff must establish (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) … the adverse action was motivated at least in part by his protected conduct. *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)) (alterations in original).

Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the Defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "In a retaliation claim such as this, however, the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action." *Thaddeus-X v. Blatter*, 175 F.3d at 394. However, the "filing of a frivolous grievance is not protected conduct." *Abraitis v. Moon*, 2020 U.S. App. LEXIS 27827, *9 (6th Cir. Sept. 1, 2020). Moreover, "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (alteration and ellipsis in original) (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)).

In his motion for summary judgment, Plaintiff cites to this Court's Report and Recommendation that, "plaintiff has sufficiently alleged that he engaged in protected conduct for purposes of element one of his retaliation claim, as well as in quote (*sic*) the court is satisfied that plaintiff's amended complaint sufficiently alleges a causal connection between his November 26th, 2021 library grievance and defendant Crank's November 27, 2021 cell search and related false

6

conduct report." [Doc. 82, PageID# 749-750 (internal quotations omitted)]. Plaintiff also points to the declaration of Russell Adkins to support the contention that Defendant Crank had a retaliatory motive. *Id*. Plaintiff appears to confuse the pleading standards for the more stringent standards required for summary judgment. Key to this analysis, and missing from Plaintiff's citation to the Report and Recommendation, is that the Court stated "at this stage of the proceedings" meaning that Plaintiff has overcome the relatively liberal pleading standards. [Doc. 43, PageID# 468-469]. Plaintiff's request for summary judgment rests on his pleadings and because all reasonable factual inferences and ambiguities must be resolved in favor of the non-moving party, Plaintiff's request for summary judgment must be denied. *See Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing *Anderson*, 477 U.S. at 255).

Similarly, Plaintiff's Eighth Amendment deliberate indifference claims against Defendant Salyers and Defendant Sammons must be denied as well. A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The first component is an objective one and requires that there be a sufficiently serious medical need. *Id.* The second component requires proof that the prison officials were deliberately indifferent to the inmate's health or safety. *Id*. Plaintiff must establish that he was deprived of medical care so necessary that the failure to provide such care deprived him of his rights under the Eighth Amendment. *Cairelli v. Vakilian*, 80 F. App'x 979, 983 (6th Cir. 2003) (citing F*armer v. Brennan*, 511 U.S. 825, 834 (1990)). Allegations of negligence in diagnosing or treating medical conditions are not actionable under 42 U.S.C § 1983. *Id*.; *Byrd v. Wilson*, 701 F.2d 592, 595 n.2 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860–61 n.5 (6th Cir. 1976). An allegation of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fails to state a cause of action. *Selby v. Martin*, 84 F. App'x 496, 499 (6th Cir. 2003).

7

Plaintiff's motion for summary judgment mentions that "defendants S. Salyer and R. Setty when the plaintiff was sprayed with 3 burst of a chemical agent" and "defendant RN C. Sammons who appears in Exhibit B-2 for a brief second, then leaves violating ODRC Policy 68-MED-01 […] which provides set procedures for medical assessment and adequate treatment […] was never properly conducted." [Doc. 82, PageID# 751- 752; 757]. Plaintiff failed to state what his medical needs were. Beyond that, Plaintiff does not show in the record how Defendant Salyers was deliberately indifferent and therefore his request for summary judgment should be denied. Similarly, it appears that Plaintiff's argument against Defendant Sammons is that his medical care was inadequate, which also precludes summary judgment in his favor against Defendant Sammons. There is no indication in the Amended Complaint that any Defendant was deliberately indifferent to Plaintiff's medical needs, only that Plaintiff deliberately disobeyed directives necessitating the use of OC spray and the formation of an extraction team in order to maintain the safety and order of the prison.

Plaintiff cannot demonstrate he is entitled to summary judgment on his Eighth Amendment excessive force claims against the remaining defendants. The Eighth Amendment prohibition on cruel and unusual punishment protects prison inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Accordingly, a prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley*, 475 U.S. at 327.

When a prison official is accused of using excessive force, the core judicial inquiry has both a subjective and objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). The subjective component focuses on the prison official's state of mind, and whether "force was applied in a good-faith effort to

8

maintain or restore discipline, or maliciously and sadistically to cause harm." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In making this inquiry, the Court must consider several factors: the threat reasonably perceived by the responsible official, the need for the use of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *Combs*, 315 F.3d at 556-57; *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321.

On the other hand, the objective component of an Eighth Amendment excessive force claim requires that a plaintiff's injury or pain be "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580; *Williams*, 631 F.3d at 383. As the Supreme Court of the United States has stated, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10; *Rafferty v. Trumbull Cty.*, 915 F.3d 1087, 1094 (6th Cir. 2019). Rather, the Eighth Amendment protects prisoners only from that conduct which is "repugnant to the conscience of mankind" and excludes "de minimis uses of physical force." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting *Hudson*, 503 U.S. at 9-10). In addition, this Court has recognized how the Sixth Circuit gives deference to prison officials using force in maintaining institutional discipline and security. See, e.g., *Anderson v. Lawless*, S.D. Ohio No. 2:17-cv-1057, 2017 U.S. Dist. LEXIS 209814, at *17 (Dec. 21, 2017) (citing *Combs*, 315 F.3d at 556-57). On occasion, the maintenance of prison security and discipline may require that inmates be subjected to physical contacts actionable as assault under the common law. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional

9

security." *Combs*, 315 F.3d at 557.

Here, Plaintiff's argument that he is entitled to summary judgment rests on a mistaken interpretation of the law. There is no question that force was used, but Plaintiff cannot point to any portion of the record that shows the force used by Defendants went beyond what was necessary to maintain institutional control, and all reasonable factual inferences and ambiguities must be resolved in favor of the non-moving party, as such, Plaintiff's request for summary judgment must be denied.

## IV. CROSS MOTION FOR SUMMARY JUDGMENT

### A. Standard

As the facts and analysis clearly show, Defendants are entitled to judgment as a matter of law on the First and Eighth Amendment claims against them. As the Supreme Court of the United States has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When opposing parties tell two different stories—one of which is blatantly contradicted by a video record so that no reasonable jury could believe it—a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Instead, those facts should be viewed

"in the light depicted by the videotape." *Id*. at 381.

On summary judgment review, the court must determine whether the evidence presents a sufficient dispute of material fact so as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at, 251-52. Where, however, a plaintiff's version of the facts is "conclusively contradicted by the record that no reasonable jury could believe it," a Court need not rely on the nonmovant's version that is so "utterly discredited by the record" as to render it a "visible fiction." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). Furthermore, as established by the Sixth Circuit in *Reich v. City of Elizabethtown*, 945 F.3d 968, (6th Cir. 2019), "[t]hough we view the facts in the light most favorable to [the non-moving party], we note that [his] version of events only faintly resembles the picture offered by the officers, the eyewitnesses, and the medical evidence." Thus, "all reasonable inferences are drawn in favor of the plaintiff, to the extent supported by the record." *Reich v. City of Elizabethtown*, 945 F.3d at 980 (quoting Chappell, 585 F.3d at 909) (emphasis in original).

**B.     Argument**

**1.     Defendant Crank is Entitled to Summary Judgment on Plaintiff's First Amendment Claim.**

To prevail on a First Amendment retaliation claim, Plaintiff must establish (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) … the adverse action was motivated at least in part by his protected conduct. *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)) (alterations in original). However, "without allegations that the officers had knowledge of the plaintiff's constitutionally protected conduct …[the] First Amendment retaliation claim could not withstand a motion a to dismiss." *Barnes v. Morgan,* S.D.Ohio No. 1:11-cv-380, 2012 U.S. Dist. LEXIS

11

5636, *29-30 (Jan. 18, 2012). Here, Plaintiff made the appropriate allegation that Defendant Crank was made aware that he could possibly be written up for denying him access to the library. [Doc 5, PageID# **]. Therefore, Plaintiff's claim survived the pleading stage. However, Defendant Crank asserts that he never had that knowledge that Plaintiff had written him up. [Defendants' MSJ Exhibit 1]. Moreover, Defendant Crank asserts that it is common practice at SOCF for incarcerated persons to threaten "write-ups" on almost every shift. *Id*. Thus, it is his practice to ignore the frivolous threats as they are so commonplace. *Id*. There is no evidence in the record, aside from Plaintiff's self-serving statement, that Defendant Crank had knowledge of any alleged protected activity and summary judgment should be granted in his favor.

Even if Plaintiff can establish that Defendant Crank had knowledge of his alleged protect conduct, Defendant Crank is still entitled to judgment as a matter of law. If the plaintiff can show the protected conduct was a motivating factor for the adverse action then the burden of production then shifts to the defendant. *Johnson v. Lawless*, S.D.Ohio No. 1:20-cv-157, 2023 U.S. Dist. LEXIS 26267, *15 (Feb. 14, 2023). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* (quoting *Thaddeus-X*, 175 F.3d at 399). Defendant Crank is required to conduct three (3) cell searches per shift, and usually conducts those searches while incarcerated persons are out of their cells to avoid conflict. [Defendants' MSJ Exhibit 1]. Defendant Crank has been consistent in that this cell search was random and routine and thus would have happened even if he had knowledge of Plaintiff's alleged protected conduct. [See Defendants' MSJ Exhibits 1-3]. Defendant Crank is entitled to summary judgment as a matter of law.

    **2.**    **Defendants' Salyers and Sammons are Entitled to Summary Judgment on Plaintiff's Eighth Amendment Deliberate Indifference Claim.**

12

To prevail on an Eighth Amendment deliberate indifference claim, Plaintiff must show that there is a sufficiently serious medical need. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). Although not clearly articulated in his motion for summary judgment, Plaintiff seems to be arguing that Defendant Salyers was deliberately indifferent for taking him off constant watch even though he claimed to be suicidal at the time. Plaintiff's contention is clearly contradicted by the record in this case. On December 3, 2021, Plaintiff was refusing direct orders to leave the constant watch cell, saying he was suicidal. [Defendants' MSJ Exhibit 5; time stamp 3:08-4:13]. Officer Conley, SOCF negotiator, asked Plaintiff why he was refusing orders. Plaintiff stopped saying he was suicidal and calmly said, "if you put me upstairs then I'll move." [*Id*. at time stamp 4:13-4:15]. Plaintiff then is seen and heard having a cogent conversation with negotiator Conley about his circumstances and continues to be non-compliant. Clearly, no reasonable juror could find that Plaintiff was suffering from a serious medical need given his abrupt change from being suicidal to asking for a different cell, and Defendant Salyers is entitled to judgment was a matter of law.

Similarly, Defendant Sammons is entitled to summary judgment. The record reflects that after the cell extraction Defendant Sammons examined Plaintiff and found no serious medical issues. [Defendants' MSJ Exhibit 6, time stamp 5:32-6:41]. It appears that Plaintiff is disputing the extent of the medical care he received; however, this does not arise to a constitutional violation, because "an allegation of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fails to state a [deliberate indifference] cause of action." *Selby v. Martin*, 84 F. App'x 496, 499 (6th Cir. 2003).

### 3. Defendant Frazie is Entitled to Summary Judgment on Plaintiff's Eighth Amendment Claim.

It is similarly unclear from Plaintiff's pleadings and his motion for summary judgment exactly what Eighth Amendment claim Plaintiff is pursuing against Defendant Frazie. Either

Plaintiff's theory of Defendant Frazie's liability is based on excessive force for the cell extraction or deliberate indifference for ordering the move from the constant watch cell back to the segregation cell. What is clear from the record is the Defendant Frazie was the shift Captain on December 3, 2021. [Defendants' MSJ Exhibit 7 p. 1]. It is also clear that Defendant Frazie ordered Plaintiff extracted from the constant watch cell after Defendant Salyers informed him that Plaintiff would no longer be on constant watch. *Id*. Aside from this supervisory role as the shift captain on December 3, 2021, Defendant Frazie had no other involvement in this case. A successful claim under § 1983 must identify a right secured by federal law and the deprivation of that right by a person acting under color of state law. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). It is well-settled that to state a cognizable claim under § 1983, a plaintiff must allege some personal involvement by each of the named defendants. *Hafer*, 502 U.S. 21, 25 (1991); *Salehpour v. Univ. of Tenn.*, 150 F.3d 199, 206 (6th Cir. 1998). "Merely naming a person as a defendant without alleging how the named defendant was involved in any constitutional violation […] renders even a pro se complaint 'subject to dismissal'". *Denkins v. Mohr*, S.D.Ohio No. 2:13-CV-00584, 2014 U.S. Dist. LEXIS 120891, at *5 (Aug. 29, 2014). The law is clear, and since Defendant Frazie had no personal involvement other than his role as a supervisor, he is entitled to judgment as a matter of law.

### 4. Defendant Setty is Entitled to Summary Judgment on Plaintiff's Eighth Amendment Claim.

Plaintiff's motion for summary judgment makes clear that Defendant Setty was the extraction team supervisor, and his alleged excessive force was the result of the OC Spray deployed in attempting to get Plaintiff to "cuff-up" and leave the constant watch cell. [Doc. 82, PageID# 751-752]. The "good faith use of physical force in pursuit of valid peneological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish*, 800 F.2d, at 604. In analyzing conduct

14

for excessive force, the Court must consider the context of the prison setting. *Id.* at 605. Courts may also evaluate "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 14 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Here the record reflects that Defendant Setty gave Plaintiff a direct order to comply with the order to be moved. [Defendants' MSJ Exhibit 7, p. 11; Defendants' MSJ Exhibit 5, time stamp 3:10 – 6:40] Defendant Setty ordered the cuff port open so that Plaintiff could be placed in restraints; however, Plaintiff refused the order. *Id*. When Plaintiff refused, Defendant Setty attempted to utilize OC Spray through the cuff port, but Plaintiff blocked it with his suicide gown. *Id*. Defendant Setty deployed OC spray through a crack in the cell door to try and gain Plaintiff compliance which failed. *Id*. Defendant Setty's use of OC spray was proportional and served a legitimate peneological interest and therefore was not excessive. Defendant Setty should be granted summary judgment.

### 5. Defendants Kinner, Stevenson, Justice, Jewell and Wellman are Entitled to Summary Judgment on Plaintiff's Excessive Force Claim.

Defendants Kinner, Stevenson, Justice, Jewell and Wellman, were assigned to extract Plaintiff from his cell when he refused orders to leave the constant watch cell on December 3, 2021. [Defendants' MSJ Exhibits 6, 7]. Once the extraction team was in place, it took one hundred and forty-eight seconds to secure Plaintiff in restraints and escort him out of the constant watch cell. [Defendants' MSJ Exhibit 6, time stamp 2:08-4:36]. "Whenever a prison official is accused of using excessive physical force in violation of the Eighth Amendment, 'the core judicial inquiry' to determine if there was unnecessary and wanton infliction of pain is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm.'" *U.S. v. Bunke*, 412 Fed.Appx. 760, 765 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). In making this inquiry, a court must consider: (1) the need for the use of force, (2) the relationship between the need and the type and amount of the force used, (3) the threat perceived by the officials, (4) and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7. The Use of Force ("UOF") documentation certainly indicates that Plaintiff had brought about the response due to his own manipulation of the move to a constant watch cell and violation of institutional rules. The combination of these factors naturally gravitate towards a ruling in favor of Defendants.

Here, there was a legitimate peneological interest in the need for the use of force. Plaintiff refused to leave a constant watch cell, which are reserved for incarcerated persons who are genuinely suffering from suicidal ideations and not people who, like Plaintiff, simply want an allegedly *nicer* cell. All other methods employed to gain Plaintiff's compliance failed, so an extraction team was needed as the threat of opening the cell without restraining Plaintiff was great. Finally, the extent of Plaintiff's injuries were *de minimis*. "The physical injury suffered [by a plaintiff] must be more than de minimis to support an Eighth Amendment excessive force claim." *Davis v. City of East Cleveland, Ohio*, No. 1:03-cv2075, 2006 WL 753129, *9 (N.D. Ohio, Mar. 22, 2006) (*quoting Robinson v. Corrections Corp. of America*, 14 Fed. Appx. 382 (6th Cir. 2001). Plaintiff claims he had a broken finger, however, the record reflects that he suffered no injury and had full use of all his extremities. [Defendants' MSJ Exhibit 7, p. 69-72]. Therefore, the extraction team used proportional force to gain compliance of Plaintiff for a legitimate peneological interest and are entitled to summary judgment in their favor.

### 6. Defendants are entitled to Qualified Immunity

Qualified immunity is available to state officials sued in their individual capacities under

42 U.S.C. § 1983. Qualified immunity provides governmental officials with the ability "'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (*quoting Davis v. Scherer*, 468 U.S. 183, 195 (1984)). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Through the use of qualified immunity, the law shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting Anderson, 483 U.S. at 638).

Plaintiff fails to set forth a cognizable claim against Defendants under § 1983. A successful claim under § 1983 must identify a right secured by federal law and the deprivation of that right by a person acting under color of state law. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *Mackey*, 837 F. Supp. at 1402. In other words, to establish personal liability upon a government officer in a § 1983 action, a plaintiff must show that the official, "acting under color of state law, *caused* the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (emphasis added).

Here, Defendants are entitled to qualified immunity. To determine whether a government official is entitled to qualified immunity, a court must decide whether the official violated a constitutional right and whether the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) *(citing Saucier v. Katz*, 533 U.S. 194, 202 (2001)); see also *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir.2011) (a court may use discretion in deciding which question to address first). Once a Defendant raises the qualified immunity defense, the Plaintiff bears the burden of

17

showing that a defendant is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (*citing Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir.2004)). As discussed, Defendants are entitled to qualified immunity as each of the allegations against them fails to demonstrate Defendants violated a clearly established constitutional right. Accordingly, Defendants respectfully request this Court grant summary judgment in their favor.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment, grant summary judgment in their favor, dismiss Plaintiff's Amended Complaint with prejudice, certify that an appeal cannot be taken in good faith, assess costs to Plaintiff, and award any other relief deemed necessary and just by the Court.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/Andrew Gatti*
ANDREW GATTI (0086854)
Senior Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233 / (855) 665-2568
Andrew.Gatti@OhioAGO.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment [Doc. 82] and Cross Motion for Summary Judgment,* has been electronically filed on June 17, 2024, and served upon Plaintiff via U.S. mail, postage prepaid at the below address.

Terrance Feaster, #A551-840<br>
Southern Ohio Correctional Facility<br>
P.O. Box 45699<br>
Lucasville, OH 45699

/s/*Andrew Gatti*
ANDREW GATTI
Senior Assistant Attorney General