**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| TERRANCE J. FEASTER, | : | Case No. 1:22-cv-313 |
| | : | District Judge Michael R. Barrett |
| Plaintiff, | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| vs. | : | |
| | : | |
| ANNETTE CHAMBERS-SMITH, *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPORT AND RECOMMENDATION**

Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while incarcerated at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio. In its December 19, 2022 Order and Report and Recommendation, the Court ordered that plaintiff could proceed with his First Amendment retaliation claim against defendant SOCF corrections officer Brennan Crank and his Eighth Amendment claims against defendants SOCF captain Phillip Frazie; SOCF lieutenants Robert Setty and Joshua Kinner; SOCF corrections officers Justin Stevenson, Carl Justice, William Jewell, and Travis Wellman; SOCF mental health administrator Sharon Salyers; and SOCF nurse Corey Sammons. (Doc. 12 at PAGEID 275). This matter is now before the parties' cross motions for summary judgment and associated briefing. (Docs. 82, 89,[1] 95, 96, and 97).

---

[1] The document is both a response in opposition to plaintiff's motion for summary judgment and defendants' motion for summary judgment, and it is filed twice to capture both filing events. (*See* Doc. 88, 89).

## I. Background

The Court previously summarized the factual background of this case as derived from plaintiff's verified amended complaint.  (*See* Doc. 12).[2]  The Court repeats the portions of that summary relevant to the pending motions.

<u>Defendant Crank</u>

Plaintiff alleges that on November 24, 2021, defendant Crank, together with an unidentified "superior officer" and another corrections officer named Merrit, who are not named as defendants, refused without explanation to let plaintiff out of his cell to go to the library.  Plaintiff alleges that he informed Crank that he would be filing a complaint, which plaintiff allegedly filed on November 26, 2021, while Crank was on a scheduled off day.  When Crank returned to work on November 27, 2021, he allegedly told other prisoners in the housing block that plaintiff had filed a complaint against him.

Plaintiff alleges that he "sens[ed] some type of retaliation" and decided not to attend recreation that evening, even though he had signed up for it and even though not going to recreation would mean a loss of shower privileges.  Plaintiff alleges that while other prisoners were at recreation, the door to his cell opened and officers asked over the loudspeaker if he wanted his shower.  Plaintiff alleges that when he left his cell to take a shower, another inmate yelled that Crank was in his cell.  Plaintiff purportedly yelled from the shower, "That's retaliation Crank."  Plaintiff

---

[2] Because the amended complaint is verified (*see* Doc. 5 at PAGEID 100), the Court considers its contents as supporting plaintiff's motion for summary judgment pursuant to 28 U.S.C. § 1764, which states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> . . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).
>
> (Signature)".

Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(c).  *Lavado v. Keohane*, 992 F.2d 601, 60 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

asserts that Crank then exited the cell with a wet piece of paper and, moments later, plaintiff was escorted to Restrictive Housing (RH).

Plaintiff asserts that at a later disciplinary hearing he was informed that he had been placed in RH based on a Conduct Report written by Crank for drug possession. Plaintiff alleges that he was placed in a "stronghold cell," which had two reinforced steel doors that remained sealed twenty-four hours a day and was generally reserved for extremely violent and unruly prisoners.

Plaintiff alleges that on December 1, 2021, he became "overwhelmed" and "at times disoriented," and placed himself on suicide watch to "escape the dangerous . . . conditions of the cell," which he allegedly had been told was "red tagged . . . for no apparent cause."  According to plaintiff, the cell had "black colored mold on the doors and wall," "ca[k]ed up semen on the left rear wall," "cor[rosion] and rust on the bed," a toilet that was "cor[roded] with feces and waste," a ventilation duct that "was covered with an unknown toxic material and mold," and a sink with cold water only.  (Doc. 5, at PAGEID 85-88).

(Doc. 12 at PAGEID 266-67) (footnotes omitted).

<u>Defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Saylers, and Sammons</u>

Plaintiff alleges that on December 3, 2021, he was told by unidentified officers in RH that he was being taken off "constant [suicide]" watch.  Plaintiff claims that he did not agree to being taken off constant watch.  He alleges that defendant Salyers tried to lure him from the constant-watch cell by saying that she wanted to speak with him in her office and later in the "strip out" cage.  Plaintiff alleges that he requested to speak with Salyers at the cell front because her requests failed to follow mental health policies and procedures.  Plaintiff alleges that Salyers told an unidentified captain that plaintiff was to "come off watch," which plaintiff claims led to him being beaten and assaulted by staff.  (Doc. 5, at PageID 89-90). . . . .

Plaintiff alleges that on December 3, 2021, after Salyers left his cell front, defendant Frazie authorized defendant Setty and two others to go to plaintiff's cell.  Plaintiff alleges that Setty and the two others arrived with "O.C. [pepper]" spray and a video camera.  Plaintiff alleges that he agreed to come off suicide watch if he was moved from the stronghold cell.  Plaintiff further alleges that his request was denied, and Setty deployed three bursts of O.C. spray through the crack of the cell door while plaintiff tried to block the spray with the suicide blanket.  Plaintiff alleges that prior to being sprayed he yelled "'ODRC Policy 64-DCM-01' Protection from harm" and stated, "I will kill myself."  Plaintiff alleges that the three corrections officers left briefly and returned with a five-man "SRT [Special Response Team]" team.

3

Plaintiff alleges that neither Setty nor the cameraman participated in the cell assault, which investigators labelled a "cell extraction." Plaintiff alleges, however, that he saw defendant Kinner with a shield. Plaintiff claims that Kinner is known "as an officer who has allegedly assaulted other prisoners." Plaintiff states that he turned his back, waiting for an order to "cuff up." According to plaintiff, the order never came. Instead, he allegedly heard the cell door open and Kinner yell, "stop resisting" even though plaintiff claims that he was not resisting. Plaintiff alleges that Kinner forced him to the back of the cell using the shield and "smashed" plaintiff against the wall. Plaintiff claims that he asked to be allowed to get on the ground to be cuffed and shackled. Plaintiff alleges that once he was on his stomach and cuffed, defendant Justice "began raining down punches and blows to the plaintiff's head," defendant Stevenson "began twisting the plaintiff's thumbs and fingers," and "officers still yelled 'stop resisting.'" Plaintiff claims that defendant Wellman dragged him backwards, causing his suicide gown to come off. Plaintiff claims that defendant Jewell began twisting plaintiff's right leg and defendant Stevenson began violently banging plaintiff's head against the floor. Plaintiff asserts that when he was pulled to his feet he was "naked, bruised, bloody, and battered." Plaintiff further states that an unknown officer continued to twist and bend plaintiff's fingers. Plaintiff alleges that he was then escorted to the strip cage, where he was assessed by defendant Salyers. When Salyers inquired if he was still suicidal, plaintiff responded, "Yes."

Plaintiff claims that defendant Nurse Sammons failed to conduct a proper medical exam or to note plaintiff's injuries. Plaintiff alleges that he complained of a broken finger, but it was never examined. Plaintiff claims that he was then escorted back to the same stronghold cell that he complained about without being able to make a statement in violation of ODRC policy. (Doc. 5, at PAGEID 90-95).

(*Id.* at PAGEID 267-69).

Plaintiff attaches to his motion for summary judgment his "Disclosure of Discovery and Intention to Use in Chief at Trial" (Doc. 82-1 at PAGEID 760-763 (Ex. A)), the Ohio Department of Rehabilitation & Correction's (ODRC's) suicide prevention policy (*id.* at PAGEID 764-73 (Ex. E)), the Use of Force Investigation Summary Report regarding the December 3, 2021 alleged use of force (*id.* at PAGEID 774-90 (individual pages marked Ex. E-1 to E-17)), documentation of plaintiff's review of video and audio recordings (*id.* at PAGEID 792 (Ex. F)), the ODRC's Deputy Warden of Operations' Review of Use of Force regarding the December 3, 2021 incident (*id.* at PAGEID 791, 793-811 (individual pages marked Ex. G-1 to

4

G-20)), the Inmate Use of Force Statement and Voluntary Statement regarding the December 3, 2021 incident (*id.* at PAGEID 812-14 (individual pages marked Ex. H-1 to H-3)),[3] the Ohio Administrative Code section regarding contraband (*id.* at PAGEID 815-17 (Ex. I)), the November 27, 2021 Incident Report regarding the search of plaintiff's cell (*id.* at PAGEID 817-20 (individual pages marked Ex. J-1 to J-4)), records showing the corrections officers on duty between November 24 and 28, 2021 (*id.* at PAGEID 821-30 (individual pages marked Ex. K-1 to K-10)), ODRC's medical services policy (*id.* at PAGEID 831-48 (Ex. L)), and letters regarding defendants' inability to produce certain audio/visual files (*id.* at PAGEID 849-50, 852).

Plaintiff's motion also refers to Exhibits B-D, which are not attached. (*See* Doc. 82 at PAGEID 748, 752). The Court believes plaintiff is referring to Exhibits B-D attached to his March 19, 2024 Motion to Compel Discovery. (*See* Doc. 75 at PAGEID 628-70). Exhibit B is correspondence between plaintiff and defendants' counsel regarding plaintiff's viewing of audio and video recordings filed produced by defendants. (*Id.* at PAGEID 628-34). Exhibit C contains copies of the Use of Force Report, Supervisor's Use of Force Summary Report, Use of Force Checklist, and Planned Use of Force Check List for the December 3, 2021 incident. (*Id.* at PAGEID 635-40). Exhibit D contains copies of ODRC's Behavioral Intervention/Use of Force, Use of Force Report, and Use of Force Investigation policies and Ohio Administrative Code section 5120-9-01. (*Id.* at PAGEID 641-70).

In addition, plaintiff also refers in his motion (*see* Doc. 82 at PAGEID 750-751) to two declarations filed elsewhere in the record but not attached to his motion for summary judgment: that of a fellow innate, Russell Adkins (Doc. 9-1 at PAGEID 117) and that of a former porter employed at SOCF, Cameron Parry (Doc. 75 at PAGEID 675-76). Finally, plaintiff's summary

---

[3] Plaintiff asserts that these documents were forged. (*See* Doc. 82 at PAGEID 754).

5

judgment briefing is all sworn or verified. (*See* Doc. 82-1 at PAGEID 851, Doc. 95 at PAGEID 1152; Doc. 96 at PAGEID 1158).

In support of their motion, defendants proffer two video recordings from handheld cameras recording inside SOCF on December 3, 2021—the date of the use of force at issue. (*See* June 24, 2024 docket notation; Defs.' MSJ Exs. 5 and 6). In the first video recording (Defs.' MSJ Ex. 5), defendant Setty explains that defendant Saylers determined that plaintiff no longer needed to be on constant watch, plaintiff refused to move cells, and defendant Frazie therefore authorized an SRT to extract plaintiff from the constant watch cell. Defendant Setty explains that to gain plaintiff's compliance, he will first try a negotiator, then oleoresin capsicum (OC) spray, and then the SRT team. At his cell, plaintiff can be heard repeating, "I'm on hunger strike," "I'm going to kill myself," and "I'm suicidal." When the negotiator and OC spray are unsuccessful at convincing plaintiff to move voluntarily, defendant Setty indicates that he will need to assemble the SRT.

In the second video recording, defendant Setty introduces the SRT team—defendants Kinner, Stevenson, Justice, Jewell, and Wellman (the SRT defendants)—and two medical staff members, a non-defendant and defendant Sammons. (Defs.' MSJ Ex. 6). Defendants Setty and the SRT defendants return to plaintiff's constant watch cell, where defendant Setty gives plaintiff one last direct order. Defendant Setty indicates that plaintiff still will not comply, and the SRT enters his cell. The video recording does not show the extraction from the interior of plaintiff's cell, and plaintiff's physical condition is not immediately apparent as he is brought out of the cell. Defendant Setty and the SRT defendants then lead plaintiff to a strip cage. Plaintiff is mostly inaudible and not clearly visible at this time. Plaintiff can be heard at one point saying, "my finger broke, man[,]" as defendant Sammons finishes examining him. (*Id.* at 6:39-41).

6

Plaintiff continues to state that he is suicidal and on hunger strike to a woman, who the Court believes to be defendant Saylers.  Plaintiff is then escorted to his new cell without further incident.

Defendants also proffer the declarations of Brennan Crank (Doc. 89-1) and Brandi Trelka (Doc. 89-2); the Conduct Report and Hearing Officer's Report with the Chairman of the Rules Infraction Board Review regarding the November 27, 2021[4] cell search (Doc. 89-3); and the Use of Force investigation documents from the December 3, 2021 incident (Doc. 89-4).

## II.  Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . .  showing that the materials cited do not establish the absence . . . of a genuine dispute.'"  *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)).  The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party.  *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

---

[4] Ms. Trelka's affidavit refers to the incident as occurring on November 11, 2021, but this appears to be a scrivener's error.  (*See* Doc. 89-2 at PAGEID 1024).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House*, *Tenn*., 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers*., 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd*, No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its

8

determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings)). A party's status as a pro se litigant, however, does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

## III. Analysis

### A. Spoliation

Before turning to the merits, plaintiff asserts that defendants have withheld or destroyed "security video #666-21," which plaintiff argues is "vital and exculpatory evidence." (*See* Doc. 82 at PAGEID 751). This video recording is identified on the "Use of Force Checklist" that has been introduced by both sides. (*See* Doc. 75 at PAGEID 639; Doc. 89-4 at PAGEID 1055). Plaintiff states that facilitator Sherri Bishop told him that this video recording was unavailable and could not be reviewed. (Doc. 82 at PAGEID 751).[5] Defendants do not respond to this

---

[5] Plaintiff also attaches a statement signed by himself and Sherri Bishop on April 11, 2024, which shows that plaintiff did not review security video 666-21. There is a partially legible notation next to "security video 666-21" that appears to read "currently unavailable." (Doc. 82-1 at PAGEID 792).

allegation.  The Court construes these allegations as a motion by plaintiff for sanctions against defendants for spoliating evidence.

Plaintiff, as the movant, bears the burden of proof on spoliation.  *See Yoe v. Crescent Sock Co.*, No. 1:15-cv-3, 2017 WL 5479932, at *9 (E.D. Tenn. Nov. 14, 2017) (citing *Byrd v. Alpha Alliance Inc. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013)).  A party seeking a spoliation sanction is required to prove:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Adkins v. Wolever*, 692 F.3d 499, 503-04 (6th Cir. 2012) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010)).  The second element may be "satisfied 'by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Adkins*, 692 F.3d at 504-05 (quoting *Beaven*, 622 F.3d at 554).

Plaintiff asserts that DVR #666-21 was "[t]he most damaging and vital evidence" because it "was not controlled by the corrupted camera operator[,]" and that it was "conveniently unavailable. . . ."  (Doc. 82 at PAGEID 753).  Plaintiff's position is that the unavailability of this video shows that defendants withheld evidence to insulate themselves from liability.

For element one, in a verified statement, plaintiff states that he "requested video [DVR #666-21] saved per policy 09-INV-01[.]"  (Doc. 96 at PAGEID 1158).  For element three, given that this video recording was listed on a statement regarding audio and video recordings to be viewed "pursuant to the pending litigation" in this case, it is relevant to the claims and defenses at issue.  (Doc. 82-1 at PAGEID 792).  But the Court sees no evidence in the record, beyond plaintiff's accusations in his verified statements—which are not based on his personal knowledge—that the record was destroyed with a culpable state of mind.  *See Wylie &*

10

*SonsLandscaping, LLC v. FedEx Ground Package Sys., Inc.*, 696 F. App'x 717, 721 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c)(4) as "stating that affidavits used to support motions for summary judgment 'must be made on personal knowledge'").  Plaintiff has not met his burden to prove spoliation.  Therefore, the Court denies plaintiff's request for spoliations sanctions.

      B.  <u>First Amendment retaliation claim against defendant Crank</u>

      In plaintiff's motion for summary judgment, he argues that the Court has already found that he sufficiently alleged protected conduct for purposes of this claim: his grievance related to defendant Crank's denial of his library privileges.  (*See* Doc. 43 at PAGEID 468-69 (discussing Doc. 5 at PAGEID 85-87)).  Plaintiff also relies on the declaration of a fellow inmate, Russel Adkins, in which Mr. Adkins states that defendant Crank told him that plaintiff had filed a grievance, and that he planned to retaliate against plaintiff.  (*See* Doc. 9-1 at PAGEID 117).

      Defendants argue in response that the foregoing evidence in insufficient to demonstrate that summary judgment should be granted in plaintiff's favor because the Court must construe all ambiguities and inferences in favor of the non-moving party.  In support of their own motion for summary judgment on this clam, defendants argue that plaintiff has failed to proffer evidence demonstrating that defendant Crank had any knowledge that plaintiff had filed a grievance against him.  Defendants rely on defendant Crank's affidavit, in which he states:

> I do not recall [plaintiff] threatening to write me up.  Over the past five (5) years of my employment as a Corrections Officer at SOCF, it is common practice of [incarcerated persons] to threaten to write the officers up for some infraction[;] it happens every day.  The best practice in dealing with these threats is to ignore them.

(Doc. 89-1 at PAGEID 1022).  Defendants argue that defendant Crank is still entitled to summary judgment, even if he knew about plaintiff's grievance against him, because his declaration establishes that he would have conducted the search of plaintiff's cell as part of his

required random cell searches on each shift regardless of the grievance. (*Id.* at PAGEID 1021-22).

Plaintiff argues in his response that the Court should disregard defendant Crank's declaration as late filed.[6] Plaintiff otherwise challenges the veracity of its contents. In his reply in support of his own motion for summary judgment, plaintiff argues that defendant Crank had never searched his cell prior to November 27, 2021, and defendant Crank violated various procedures regarding cell searches and contraband, suggesting that his actions were not random. In their reply in support of their motion for summary judgment, defendants argue that a single cell shakedown cannot constitute adverse action for purposes of a First Amendment retaliation claim.

The following elements comprise a First Amendment retaliation claim:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Inmates have the "right to file 'non-frivolous' grievances against prison officials on [their] own behalf, whether written or oral." *Id.* at 265 (citations omitted). With respect to the third element, the plaintiff must first show that the protected conduct was a motivating factor behind the adverse action; then, the burden shifts to the defendant to show that

---

[6] The Court sees no reason to decline to consider the declarations submitted in support of defendants' motion for summary judgment, as urged by plaintiff. *See Dorsey v. DeJoy*, No. 1:18-cv-615, 2022 WL 908855, at *19 (S.D. Ohio Mar. 29, 2022) ("[T]he Court recognizes that the declaration at issue was first submitted [during summary judgment briefing]. But it is not at all unusual for parties to support their opposition to such a motion with a declaration or affidavit.").

he would have taken the same action regardless of the protected activity. *See Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018).

Plaintiff grieved defendant Crank's denial of plaintiff's library privileges on November 26, 2021. (*See* Doc. 5 at PAGEID 85-86; Doc. 9-1 at PAGEID 116 (grievance)). Defendants do not argue that this grievance was frivolous—only that defendant Crank ignored it. Plaintiff has presented unrefuted evidence of element one of his First Amendment retaliation claim.

With respect to element two, defendants argue that defendant Crank did not take adverse action against plaintiff because a single cell search is not adverse action. As this Court has already determined, however, plaintiff alleges that defendant Crank falsified a conduct report based on that search. (*See* Doc. 43 at PAGEID 470, citing *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) ("[F]alse disciplinary reports" are "adverse action that could deter a person of ordinary firmness from engaging in protected conduct.")). Plaintiff has made verified statements that the disciplinary report based on defendant Crank's cell search was falsified. (*See, e.g.*, Doc. 95 at PAGEID 1146 (Defendant Crank "acted by issuing a falsified conduct report.")). "[A] prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment . . . even if the record lacks corroborating evidence. . . . [T]here is no rule of procedure that allows federal courts to disregard the plaintiff's testimony simply because it is self-serving." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022) (citing *Moran v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015) and *Pierce v. Rowland*, 2021 WL 3929549, at *4-5 (6th Cir. Sept. 2, 2021)).

With respect to element three, defendants argue that plaintiff has produced no evidence of causation, and defendant Crank's declaration establishes that he did not know that plaintiff filed a grievance against him. Plaintiff's verified statement, however, constitutes evidence that he informed defendant Crank about the forthcoming grievance. (*See* Doc. 5 at PAGEID 85). Mr.

Adkins' declaration is also evidence that defendant Crank knew about it and intended to retaliate. (*See* Doc. 9-1 at PAGEID 117).  *See* Fed. R. Evid. 801(d)(2) (an admission by a party-opponent offered against such party is admissible as non-hearsay).  Finally, the temporal proximity between the grievance and conduct report is circumstantial evidence of a causal connection between the two.  *Cf. Coleman v. Bowerman*, 474 F. App'x 435, 437-38 (6th Cir. 2012) (explaining that temporal proximity between the protected conduct and adverse action, *alone*, is usually not enough to establish an inference of a retaliatory motive).

Given the foregoing, the Court concludes that both parties' motions for summary judgment should be denied as to plaintiff's First Amendment retaliation claim.  There are genuine issues of material fact as to elements two and three of this claim, which implicate "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" that are jury functions.  *Anderson*, 477 U.S. at 255.

C.  Eighth Amendment excessive force claims

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Eighth Amendment excessive force claims include both a subjective and an objective component.  *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023).  The subjective component focuses on the prison official's state of mind, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious."  *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).  In the "use-

14

of-force context, the Supreme Court has applied a more demanding subjective test but a more relaxed objective test." *Sootsman*, 79 F.4th at 615-16.

The subjective intent necessary to sustain an excessive force claim goes beyond "deliberate indifference," which can suffice in the areas of inadequate medical care or conditions of confinement. *Id.* at 616. Instead, force must have been exerted "maliciously and sadistically to inflict pain" to be actionable under the Eighth Amendment. *Id.* (citing *Hudson*, 503 U.S. at 5-7). Force believed necessary, *even if that belief is unreasonable*, will not violate the Eighth Amendment. *Id.* (citing *Whitley*, 475 U.S. at 324). To determine intent, courts are to consider: "What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force?" *Id.* at 618 (citing *Hudson*, 503 U.S. at 7, and *Whitley*, 475 U.S. at 321). These questions underscore that force used "in a good-faith effort to maintain or restore discipline" does not violate a prisoner's Eighth Amendment rights. *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (defendant corrections officers applied force—spraying the prisoner with pepper spray—in a "good-faith effort to maintain or restore discipline, not to maliciously cause pain[,]" where the prisoner repeatedly disobeyed the officers' direct orders to "sit cross-legged on his bunk and face the wall")).

The objective element in excessive force cases requires the harm to a prisoner to "rise to a sufficiently serious level because the Eighth Amendment prohibits only 'cruel and unusual' deprivations. . . ." *Sootsman*, 79 F.4th at 615 (citations omitted). In excessive force cases, "contemporary standards of decency" determine "whether specific conduct qualifies as cruel and unusual." *Id.* at 616 (quoting *Hudson*, 503 U.S. at 8). The Court must examine "the nature of the force rather than the extent of the injury." *Wilkins*, 559 U.S. at 34. While the extent of a

prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37).  The Supreme Court has held:

> When prison officials maliciously and sadistically use force to cause harm . . . , contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9).  The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation.  *Id.* (quoting *Hudson*, 503 U.S. at 7).  "Although the Eighth Amendment can reach minor injuries caused by significant force," it "does not apply to '*de minimis* uses of physical force' so long as this force does not repulse 'the conscience of mankind.'"  *Sootsman*, 79 F.4th at 616 (quoting *Hudson*, 503 U.S. at 9-10).

    1.  *Defendant Frazie*

In plaintiff's amended complaint and motion for summary judgment, the only conduct attributed to defendant Frazie is his authorization of the use of force.  (*See* Doc. 5 at PAGEID 90; Doc. 82 at PAGEID 754 (referring to Doc. 82-1 at PAGEID 793 (Use of Force Checklist))).  In defendants' opposition to plaintiff's motion and their own motion for summary judgment, they argue that defendant Frazie was merely a supervisor and had no other involvement with any of the conduct at issue.  (*See, e.g.*, Doc. 89-4 at PAGEID 1037 (Use of Force Report Summary Report states that defendant Frazie was the shift captain and authorized the SRT based on defendant Saylers' report that plaintiff was coming off of constant watch)).  Plaintiff does not respond to this argument.

To establish his Eighth Amendment excessive use of force claim against defendant Frazie, plaintiff must present evidence that Frazie "at least implicitly authorized, approved, or

knowingly acquiesced in the *unconstitutional conduct* of the offending officers." *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (emphasis added). While Frazie authorized the SRT officers to use force to extract plaintiff from his cell, plaintiff offers no evidence that Frazie participated in the cell extraction or authorized any use of *excessive* force against him by the officers. "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). Plaintiff has not presented evidence that defendant Frazie's authorization of the SRT—the only individual action he is alleged to have taken—violated plaintiff's constitutional rights. As such, defendants' motion for summary judgment should be granted as to the Eighth Amendment claim against defendant Frazie, and plaintiff's motion for summary judgment should be denied.

### 2. *Defendant Setty*

In his motion for summary judgment, plaintiff appears to argue that defendant violated his Eighth Amendment rights by spraying him with O.C. spray while he was on suicide watch and by failing to "give procedural cuff up demands. . . ." (Doc. 82 at PAGEID 752).[7] In their motion for summary judgment, defendants argue that defendant Setty's use of O.C. spray was proportional to legitimate penological goals and does not constitute excessive force.

The video recording evidence in the record shows that before using O.C. spray, defendant Setty gave plaintiff multiple orders to turn around so that he could be cuffed, which plaintiff audibly denies. (*See* Defs.' MSJ Ex. 5 at 5:50-6:00). In plaintiff's verified amended complaint, he alleges that he "attempted to block what [O.C. spray] he could with the suicide blanket."

---

[7] Plaintiff references various violations of ODRC mental health and use of force procedures. (*See* Doc. 82 at PAGEID 751-52). But plaintiff fails to identify exactly what conduct violated exactly what aspects of these policies.

(Doc. 5 at PAGEID 91).  This is consistent with the video recording.  (*See* Defs.' MSJ Ex. 5 at 6:00-24).

The Court begins with inquiries related to the subjective element of plaintiff's Eighth Amendment claim against defendant Setty, i.e., his intent.  As to the extent of plaintiff's injury, the Medical Exam Report following the incident reflects "temporary impaired vision" and "[a]lteration in skin integrity" due to the exposure (Doc. 89-4 at PAGEID 1105-06), but plaintiff's complaints regarding physical injury focus on what happened *after* the O.C. sprays— his alleged beating and broken finger.  As to the nature of plaintiff's threat and proportionality of that threat to the use of force, the Court notes that plaintiff repeatedly disobeyed direct orders to turn around to be cuffed up.  "Multiple courts including the Sixth Circuit repeatedly have held that a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order."  *Jeter v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-cv-756, 2019 WL 5066851, at *6 (S.D. Ohio Oct. 9, 2019) (report and recommendation) (collecting cases), *adopted*, 2020 WL 633300 (S.D. Ohio Feb. 11, 2020).  Finally, as to whether defendant Setty tried to avoid or reduce the amount of force necessary, he employed the services of a negotiator and gave plaintiff additional opportunities to comply before using O.C. spray.  (*See generally* Defs.' MSJ Ex. 5).  In the video recording, defendant Setty explains that he obtained clearance from defendant Sammons to use O.C. spray on plaintiff.  (*See id.* at 0:55-1:03).  (*See also* Doc. 89-4 at PAGEID 1056 (Planned Use of Force Check List showing that defendant Sammons cleared the use of O.C. spray on plaintiff)).  The Court concludes that plaintiff has failed to proffer evidence creating a genuine issue of material fact that defendant Setty used O.C. spray maliciously and sadistically to inflict pain for purposes of the subjective element of an Eighth Amendment excessive force claim.  Thus, defendants' motion for summary judgment on

plaintiff's Eighth Amendment claim against defendant Setty should be granted, and plaintiff's motion should be denied.

### 3. *Defendants Kinner, Stevenson, Justice, Jewell, and Wellman*

The SRT defendants physically removed plaintiff from his constant watch cell on December 3, 2021.  In his motion for summary judgment, plaintiff argues that the available video footage (from a camera held by a SOCF employee) intentionally does not show the severe beating he suffered.  Plaintiff argues that while the SRT defendants are heard on the video recording yelling, "stop resisting," he did not in fact resist.  (Doc. 5 at PAGEID 93, Doc. 82 at PAGEID 752).  Plaintiff also relies on the declaration of Cameron Parry, a porter at SOCF at the time of this extraction, who witnessed plaintiff's "swollen and black eye" with "caked up blood and cuts on his head" and "swollen" fingers.  (Doc. 75 at PAGEID 675).  Plaintiff argues that the SRT defendants' voluntary statements about the use of force at issue (*see* Doc. 82-1 at PAGEID 777-83) are false.  In particular, plaintiff states that defendant Jewell's statement about plaintiff moving around the bed in his cell (*see id.* at PAGEID 780) is inconsistent with the other statements, and the video recording does not reflect plaintiff telling the SRT defendants something to the effect of, "come and get me," as reported by defendants Kinner and Setty (*see id.* at PAGEID 779, 785).

Defendants argue in response that plaintiff has not meet his burden to show that he is entitled to summary judgment on his Eighth Amendment claims against the SRT defendants.  As for their own motion for summary judgment, defendants argue that Use of Force documentation and video of the incident show there is no genuine issue of material fact as to whether the force used was excessive.  Rather, it shows that the relatively short encounter between the SRT defendants and plaintiff, including the force used to extract him from the cell, was proportional to the penological interest in removing plaintiff from the constant watch cell.

19

The Court finds that both parties' summary judgment motions should be denied on plaintiff's Eighth Amendment claims against these defendants. As to the objective element of these claims, plaintiff's evidence shows more than *de minimis* force was used to extract him from the cell. According to plaintiff's verified statements, after the cell door was opened, defendant Kinner used his shield to force plaintiff to the back of the cell wall and "smashed [plaintiff] against the wall." (Doc. 5 at PAGEID 92). Plaintiff states that once he was lying prone on the floor with his hands cuffed and offering no resistance, defendant Justice repeatedly punched plaintiff in the head; defendant Jewell twisted plaintiff's right leg "attempting to break" it; defendant Stevenson twisted plaintiff's thumbs and fingers and banged plaintiff's head "violently against the cell floor causing instant paint and swelling" (*id.* at PAGEID 94); and defendant Wellman dragged plaintiff backwards causing his suicide gown to come off "leaving him exposed and naked" (*id.* at PAGEID 93). Plaintiff states when he was pulled to his feet, he was "naked, bruised, bloody, and battered" (*id.* at PAGEID 94), and his finger was broken. Plaintiff also proffers the declaration of a SOCF porter at the time of the extraction, Cameron Parry, who reports witnessing injuries consistent with plaintiff's account. (*See* Doc. 75 at PAGEID 675). Defendants, on the other hand, point to the Medical Exam Report following the incident, in which defendant Sammons noted no injuries—specifically stating: "Movement noted to all . . . digits before patient stated he had a fracture. No edema or discoloration noted to sight." (Doc. 89-4 at PAGEID 1105). Other than a minor reaction to the O.C. spray, plaintiff's objective examination following the extraction was normal. (*Id.* at PAGEID 1105-06).

The extent of plaintiff's injuries, which may inform the amount of force used under the circumstances, is disputed. In addition, the Supreme Court has recognized uses of force similar to that alleged by plaintiff here can establish an Eighth Amendment violation. *See Wilkins*, 559 U.S. at 38 ("Wilkins alleged that he was punched, kicked, kneed, choked, and body slammed"

20

without provocation and resulting in a bruised heel, back pain, and other injuries requiring medical treatment.); *Hudson*, 503 U.S. at 4 (prisoner was punched in the mouth, eyes, chest, and stomach and suffered "minor bruises and swelling of his face, mouth, and lip" and cracked dental plate). The parties' differing versions of the events cannot be resolved on summary judgment.

As to the subjective element of these claims, plaintiff has made verified statements that when the SRT team entered his cell, he was "already turned around" waiting "to be cuffed and shackled" and was not resisting (Doc. 5 at PAGEID 92)—i.e., complying with defendant Setty's final order. (*See also* Doc. 82 at PAGEID 752 (plaintiff states he had "his back turned in a defenseless position")). The Use of Force documentation suggests otherwise. (*See* Doc. 89-4 at PAGEID 1037-1103 (statements describing plaintiff's active resistance and attempts to blocky entry to his cell). There are genuine issues of fact as to whether the force used by the SRT defendants was in a good-faith effort to extract plaintiff from the cell or was exercised maliciously for the purpose of causing harm.

The video recording does not settle these divergent accounts. (*See* Defs.' MSJ Ex. 6 at 2:00-5:00). Plaintiff is not clearly audible or visible just before the SRT enters his cell. Once the SRT defendants begin the extraction, they can be heard yelling "get on the floor" and "stop resisting," but plaintiff is not clearly audible or visible at this time either. Plaintiff exits the cell squinting, but he does not appear otherwise obviously injured. (*See id.* at 5:00). Plaintiff does not speak or move obviously abnormally as he is escorted to the strip cell. Plaintiff is not clearly visible or audible in the strip cell. (*See id.*, beginning at 5:00).

Given the foregoing, the Court finds that genuine issues of material fact remain as to both the objective and subjective components of plaintiff's Eighth Amendment claims against the SRT defendants. As such, both parties' summary judgment motions should be denied as to the Eighth Amendment claims against these defendants.

D. <u>Eighth Amendment deliberate indifference claims</u>

The Eighth Amendment also protects inmates from deliberate indifference to their serious

medical needs. *Greene*, 22 F. 4th at 605. Like excessive force claims, there is a two-part

framework. *Id.* (citing *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 567 (6th Cir. 2020), and

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). For the objective component, a plaintiff must

"prove that the alleged deprivation of medical care was serious enough to violate the

[Constitution]." *Id.* (quoting *Griffith*, 975 F.3d at 567) (alteration in original). For the subjective

component, a plaintiff must prove "that 'each defendant subjectively perceived facts from which

to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then

disregarded that risk by failing to take reasonable measures to abate it.'" *Id.* at 605-06 (quoting

*Griffith*, 975 F.3d at 568).

1. *Defendant Setty*

To the extent plaintiff asserts a deliberate indifference claim against defendant Setty for

taking him off of constant watch, the Court finds that defendant Setty is entitled to summary

judgment. "[A] 'non-medically trained officer does not act with deliberate indifference to an

inmate's medical needs when he 'reasonably deferred to the medical professionals' opinions.'"

*Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 608 (6th Cir. 2022) (quoting *McGaw v. Sevier

Cnty., Tenn.*, 715 F. App'x 495, 498 (6th Cir. 2017)). Plaintiff points to no evidence

demonstrating it was unreasonable for defendant Setty to defer to defendant Saylers' opinion;

and plaintiff's statement on the video recording (Defs.' MSJ Ex. 5 at time stamp 4:13-15 ("If you

put me upstairs, I'll move.")),[8] is evidence demonstrating that it was reasonable to defer to her

---

[8] This statement reflects that plaintiff's resistance to leaving the constant watch cell related to where he would be relocated in the prison rather than genuine concern about his mental state.

opinion.  Defendant Setty is entitled to summary judgment on any claim against him for deliberate indifference to plaintiff's serious medical needs under the Eighth Amendment.

   2.  *Defendant Saylers*

Plaintiff appears to allege that defendant Saylers violated prison rules by taking him off of constant watch despite his insistence that he was suicidal, which resulted in the alleged beating.  Defendants argue that the video recording of the negotiation attempt preceding the SRT extraction supports defendant Saylers' assessment that plaintiff was not suicidal, and therefore he did not have a sufficiently serious medical need for purposes of the objective component of the Eighth Amendment claim against her.

Plaintiff's amended complaint explains that he was initially put in a constant watch cell as a suicide precaution, and defendant Saylers later determined that he did not need to remain on constant watch.  Put differently, plaintiff alleges that defendant Saylers' care for his mental health was inadequate.  To satisfy the objective component of an Eighth Amendment claim under such circumstances, plaintiff must provide "verifying medical evidence" demonstrating that the inadequate treatment caused a serious harm.  *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004) (a verifying medical evidence requirement "applies where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious.") (citing *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)).  Plaintiff proffers no such evidence.[9]

---

[9] Defendants have presented evidence demonstrating that the alleged serious medical need was not obvious.  They point to plaintiff's statement in his amended complaint that he "placed himself on suicidal watch *to escape the dangerous . . . conditions of the cell* [in which he was housed]. . . ."  (Doc. 5 at PAGEID 88 (emphasis added)).  In addition, prior to gathering the SRT, the video recording shows plaintiff saying, "If you put me upstairs, I'll move." (Defs.' MSJ Ex. 5 at time stamp 4:13-15).

Even if the Court were to find that plaintiff satisfied the objective component, however, he fails to create a genuine issue of fact on the subjective component. Plaintiff must present evidence showing that defendant Saylers "subjectively perceived facts from which to infer substantial risk" of the alleged excessive force, actually drew that inference, and disregarded it by taking plaintiff off of constant watch. *Greene*, 22 F.3d at 605-06 (quoting *Griffith*, 975 F.3d at 568). If there was a risk that defendant Sayler's decision would result in the alleged use of excessive force, it was attenuated at best—not substantial. In any event, plaintiff has offered no evidence showing that defendant Saylers subjectively perceived facts from which she should have inferred that her decision risked *any harm at all*—let alone the alleged excessive force that plaintiff suffered.[10] Plaintiff's motion for summary judgment on his claim against defendant Saylers should be denied, and defendants' motion should be granted.

### 3. *Defendant Sammons*

Plaintiff appears to allege that defendant Sammons did not adequately treat his broken finger. In both his verified amended complaint and on the video recording of the incident, plaintiff states that he believed his finger was broken. (Doc. 5 at PAGEID 95; Defs.' MSJ Ex. 6 at 6:38)). Plaintiff also relies on the declaration of SOCF porter Mr. Parry, who observed plaintiff's swollen finger and reported plaintiff's injuries to plaintiff's family. (Doc. 75 at PAGEID 675). Defendants present medical records indicating that plaintiff did not suffer from a serious medical condition. On examination, the medical progress note states: "[M]ovement noted to all extremities and digits before patient stated he had a fracture. No edema or

---

[10] In cases where an inmate has committed suicide, the Sixth Circuit has held that a showing of deliberate indifference requires a plaintiff to show that an official perceived a "strong likelihood" of suicide. *See Downard for Est. of Downard v. Martin*, 968 F.3d 594, 601 (6th Cir. 2020). In that context, the Sixth Circuit held that "recent threats of suicide" alone are insufficient to demonstrate that an official perceived a "strong likelihood" of suicide. *Id.* (citing *Nallani v. Wayne Cnty.*, 665 F. App'x 498, 507-08 (6th Cir. 2016)). If threats of suicide are not enough to place an official on notice of a strong likelihood of suicide, it is even less likely that they would put an official on notice of substantial risk of totally independent harm (i.e., the use of force by third parties).

discoloration noted to sight. No injuries noted to patient." (Doc. 89-4 at PAGEID 1105). Plaintiff was advised to [f]ollow up with infirmary if needed." (*Id.*). Defendants also argue that the inadvertent failure to provide adequate medical care and negligent diagnoses are not actionable under the Eighth Amendment.

While a broken finger may constitute a serious medical need in some circumstances, plaintiff here has failed to meet either the objective or subjective component of this claim. It is undisputed that defendant Sammons, a nurse at SOCF, examined plaintiff after his extraction from the cell. Defendant Sammons assessed no injury to plaintiff's finger and provided no treatment to plaintiff. Plaintiff disagrees with this finding and states his finger was broken.

Under these circumstances, it was incumbent upon plaintiff to establish that he suffered from a serious medical need. "[I]f a plaintiff suffered from a minor or non-obvious medical condition, he can show that his condition was objectively serious 'if it is one that has been diagnosed by a physician as mandating treatment.'" *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2007) (quoting *Blackmore*, 390 F.3d at 987). "[A] plaintiff proceeding under this theory must . . . show '*that he actually experienced the need for medical treatment*, and that the need was not addressed within a reasonable time frame.'" *Id.* (citing *Blackmore*, 390 F.3d at 900). In addition, where, as here, an inmate's condition "is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

Plaintiff offers no evidence that his finger was actually broken. Nor does he present any evidence showing that defendant Sammons' allegedly inadequate treatment had any detrimental effect on him. As such, plaintiff has failed to raise a genuine issue of material fact that he has

suffered a sufficiently serious injury for purposes of the objective element of his Eighth Amendment claim against defendant Sammons.

Even if the injury were objectively severe, "errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference" for purposes of the subjective element. *Rinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018). Plaintiff has presented no evidence that defendant Sammons "subjectively perceived facts from which to infer substantial risk" of harm to plaintiff. *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). Plaintiff's motion for summary judgment on his Eighth Amendment claim against defendant Sammons should be denied, and defendants' motion should be granted.

E. *Qualified immunity*

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity insulates government officials not only from individual liability for money damages, but it also shields them from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part*, *Pearson v. Callahan,* 555 U.S. 223 (2009).

There are two steps to the qualified immunity analysis: (1) whether the officer's conduct violated a constitutional right, and (2) if the first step is satisfied, whether the right was clearly established at the time of the injury. *Saucier,* 533 U.S. at 201. In its discretion, the Court may choose to address either question first given the particular circumstances of the case before it. *Pearson,* 555 U.S. at 236. Once a defendant raises the qualified immunity defense, plaintiff has the burden to demonstrate that the official is not entitled to qualified immunity. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). For the court to find that a constitutional right is

clearly established, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendants argue that they are entitled to qualified immunity because plaintiff has failed to demonstrate that their conduct violated plaintiff's constitutional rights. Defendants Frazie, Setty, Saylers, and Sammons are entitled to qualified immunity because plaintiff has failed to establish that these defendant violated his constitutional rights. As explained above, however, the Court finds that genuine issues of material fact preclude summary judgment on plaintiff's First Amendment retaliation claim against defendant Crank and Eighth Amendment excessive force claims against the SRT defendants. The Court therefore considers the second prong of the qualified immunity analysis with respect to defendant Crank and the SRT defendants.

"[A] prisoner's 'right to be free from retaliation, in the form of the issuance of a false major misconduct ticket, against the exercise of his First Amendment rights' is clearly established for purposes of qualified immunity." *Scott v. Stone*, 254 F. App'x 469, 475 (6th Cir. 2007) (quoting *Scott v. Churchill,* 377 F.3d 565, 571-72 (6th Cir. 2004)). As such, defendant Crank is not entitled to qualified immunity.

As to the SRT defendants, it is clearly established that an inmate may not be beaten *for no reason. See Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 540 (6th Cir. 2015) ("Under the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and nonresisting detainees, arrestees, or convicted prisoners are impermissible.") (citing *Pelfry v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995); *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002)). But "clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Creighton*, 483 U.S. at 640). In the video recording of the

extraction, defendant Setty issues the final order, notes that plaintiff will not comply, and states that plaintiff is to be extracted from the cell.  (*See* Defs.' MSJ Ex. 6 at 1:48).[11]  It is only after plaintiff fails to comply with that final order that the SRT defendants enter plaintiff's cell.  Because plaintiff disobeyed a direct order and was not yet restrained, the *initial* force the SRT defendants used to enter plaintiff's cell and restrain him does not violate clearly established law.

There is a genuine issue of material fact, however, as to whether defendants Justice, Stevenson, Wellman, and Jewell continued to apply force *after* plaintiff was subdued and restrained in handcuffs.  (*See* Doc. 5 at PAGEID 93-94 (Defendant Justice "began raining down punches and blows to the plaintiff's head"; defendant Stevenson "began twisting the plaintiff's thumbs and fingers in an attempt to break them" and "began banging the plaintiff's head violently"; defendant Wellman dragged plaintiff leaving him naked; and defendant Jewell "began twist[ing] and attempting to break the plaintiff's right leg.")).  As such, these defendants are not entitled to qualified immunity because such conduct violates clearly established law.  Because plaintiff does not allege that defendant Kinnear used excessive force on him after he was subdued and restrained in handcuffs, he is entitled to qualified immunity.  (*See id.*).

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's motion for sanctions based on spoliation is **DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's motion for summary judgment (Doc. 82) be **DENIED**.

---

[11] Plaintiff states in his amended complaint and motion for summary judgment that defendant Setty did not give this order.  (*See* Doc. 5 at PAGEID 92; Doc. 82 at PAGEID 752).  But this video recording evidence clearly contradicts plaintiff's account.  *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

2. Defendants' motion for summary judgment (Doc. 89) be **GRANTED in part** as to plaintiff's Eighth Amendment claims against defendants Saylers, Sammons, Frazie, and Kinner;

3. Defendant's motion for summary judgment (Doc. 89) should be **DENIED in part** as to plaintiff's First Amendment retaliation claim as to defendant Crank and as to plaintiff's Eighth Amendment excessive force claims against defendants Stevenson, Justice, Jewell, and Wellman.

Date: October 23, 2024

KAREN L. LITKOVITZ
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| TERRANCE J. FEASTER, | : | Case No. 1:22-cv-313 |
| | : | District Judge Michael R. Barrett |
| Plaintiff, | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| vs. | : | |
| | : | |
| ANNETTE CHAMBERS-SMITH, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).