# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **TERRANCE J. FEASTER,** | : | |
| | : | **Case No. 1:22-cv-313** |
| **Plaintiff,** | : | |
| | : | **Judge Michael R. Barrett** |
| **v.** | : | |
| | : | **Magistrate Judge Karen L. Litkovitz** |
| **ANNETTE CHAMBERS-SMITH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [DOC. #98]

Travis Wellman, Carl Justice, Brennan Crank, William Jewell, Justin Stevenson[1] (Defendants), file their Objections to portions of the Magistrate Judge's Report and Recommendation [Doc. #98]; specifically, the recommendation that the District Court Judge deny summary judgment in favor of Defendants regarding Plaintiff's alleged retaliation and excessive force claims. At a minimum, Defendants reassert that they are entitled to qualified immunity.

Defendants' Objections are filed pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C). Specifically, Defendants assert that portions of the Magistrate Judge's Report and Recommendation rely upon particular facts that are clearly erroneous and applied legal conclusions and precepts that are contrary to law, and/or failed to apply legal conclusions and precepts that constitute precedent from this District Court. The attached Memorandum of Law explains and supports Defendants' Objections.

---

[1] The conclusion of the Magistrate Judge's Report and Recommendation, excludes granting summary judgement for Defendant Setty. [Doc. 89, PageID# 1196]. However, the body of the Magistrate Judge's decision dismisses the claims against Defendant Setty. *Id.* at PageID# 1186; 1190].

Respectfully Submitted,

DAVE YOST (0056290)
Ohio Attorney General

 /s/***Andrew Gatti***
ANDREW GATTI (0086854)
Senior Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/ (855) 665-2568
Andrew.Gatti@OhioAGO.gov

*Counsel for Defendants*

## MEMORANDUM IN SUPPORT

## I.    STATEMENT OF THE CASE

Plaintiff, Terrance Feaster #A551-840, is an incarcerated person who is currently and all times relevant to his Amended Complaint being housed by the Ohio Department of Rehabilitation and Correction (ODRC) at the Southern Ohio Correctional Facility (SOCF). On June 2, 2022, Plaintiff filed his initial sixty-one (61) page complaint against forty-four (44) defendants alleging twenty-six (26) different claims. [Doc. 1]. This Court ordered Plaintiff to file an amended complaint not to exceed twenty (20) pages. [Doc. 2]. Plaintiff filed an Amended Complaint on June 24, 2022, and an additional Complaint December 15, 2022. [Docs. 5, 11]. Plaintiff's December 15, 2022, Complaint [Doc. 11] is identical to the previously denied June 2, 2022, Complaint, [Doc. 1]. The Court performed its initial screening on Plaintiff's Amended Complaint [Doc. 5] and recommended dismissing a number of claims and Defendants listed within. [Doc. 12]. In the Amended Complaint the Court identified seven (7) claims against nineteen (19) defendants. [*Id*. at PageID# 265]. After careful analysis, the Court dismissed all of Plaintiff's claims with the exception of his First Amendment claim against Defendant Crank and his Eighth Amendment claim against Defendants Frazie, Setty, Kinner, Stevenson, Justice, Jewell, Wellman, Salyers and Sammons. [*Id*. at PageID# 275].

The claims the Court extricated from Plaintiff's Amended Complaint involve incidents which occurred between November 24, 2021, and December 3, 2021. [Docs. 5, 12]. Plaintiff alleges that on November 24, 2021, he was denied library access by Defendant Crank. [Doc. 12, PageID# 266]. Plaintiff stated that since he was denied library access, he threatened to "write-up" Defendant Crank, which he did on Defendant Crank's day off. *Id*. When Defendant Crank returned to work on November 27, 2021, Plaintiff alleges his cell was searched by Defendant Crank in

retaliation for the "write-up." *Id*.

As a result of the cell search conducted by Defendant Crank, Plaintiff was found in violation of institutional rules and placed in restrictive housing for drug possession. [Doc. 12, PageID# 266; Doc. 89-3, PageID# 1029-1030]. The disposition of Plaintiff's institutional rules violation was subject to administrative review by the Warden and affirmed. [*Id*. at PageID# 1031]. Part of the administrative review was a statement by Investigator Charles Miller who opined that the contraband contained in Plaintiff's cell was consistent with how drugs, specifically spice/K2, have been found or packaged in SOCF. [*Id*. at PageID# 1032]. On December 20, 2021, Plaintiff appealed his conviction to the chief legal counsel. [*Id*. at PageID# 1034]. Plaintiff conviction was upheld on appeal. [*Id*. at PageID# 1036].

In restrictive housing, Plaintiff was placed in a stronghold cell where he deemed the conditions dangerous and the accommodations unsatisfactory. Therefore, Plaintiff, "placed himself on suicidal watch to escape the dangerous and conditions (*sic*) of the cell in (R.H.)," and was removed to a constant watch cell. [Doc. 5, PageID# 88]. Plaintiff then claims that Defendant Salyers, a mental health administrator, took Plaintiff off constant which effectively caused him to be returned to his previous stronghold cell. [Doc. 5, PageID# 88-91]. Plaintiff claims this is in contravention to the institution's policy. *Id*.

After Defendant Salyers ordered the removal of Plaintiff from constant watch, he was directed out of the cell by Defendant Setty. *Id*. Plaintiff admittedly defied direct orders to come out of the constant watch cell, so Defendant Setty used Oleoresin Capsicum (OC) spray to gain Plaintiff's compliance with the those orders. *Id*. When the OC spray did not result in Plaintiff's compliance, a five (5) man cell extraction team was employed to gain Plaintiff's compliance. [*Id*. PageID# 91-95]. Plaintiff claimed he was injured during the extraction and Defendant Sammons

provided improper care. *Id*.

Plaintiff filed his motion for summary judgment on May 13, 2024. [Doc. 82]. Defendants filed a cross motion for summary judgment and opposition to Plaintiff's motion on June 17, 2024. [Doc. 89]. The Magistrate Judge issued a Report and Recommendation (R&R) on October 23, 2024, denying Plaintiff's motion for summary judgment and granting in part, but denying in part Defendant's motion for summary judgment. [Doc. 98]. Defendants now file their Objections specifically to those portions of the Magistrate Judge's R&R, denying their motion for summary judgment.

## II.     STANDARD OF REVIEW OF OBJECTIONS BY A DISTRICT COURT

Fed. R. Civ. P. 72(a) sets the standard of review for a district court's disposition of objections made to a magistrate judge's order, stating in pertinent part, "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." A district judge conducts their review of timely objections under a *de novo* standard. Fed. R. Civ. P. 72(b)(3).

Objections made to a magistrate judge's factual findings are reviewed under the "clearly erroneous" standard, while objections to legal conclusions are considered under the more lenient "contrary to law" standard. *Itskin v. Gibson*, No. 2:10-CV-689, 2012 U.S. Dist. LEXIS 32169, at *3 (S.D. Ohio Mar. 9, 2012), *citing Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). Factual findings under the "clearly erroneous" standard are proper only when the district court is left with a definite and firm conviction that a mistake has been made. *Itskin, supra, citing In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995). A court's review of legal conclusions under the "contrary to law" standard is plenary, and the court "may

overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Itskin, supra, citing Gandee, supra* at 686.

### A. The Report and Recommendation is "Contrary to Law" as it misapplied prior precedent when evaluating Plaintiff First Amendment Retaliation Claim

As a threshold matter, to prevail on a First Amendment retaliation claim, Plaintiff must establish (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) … the adverse action was motivated at least in part by his protected conduct. *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)) (alterations in original). The R&R found that the Plaintiff, "presented unrefuted evidence of the first element [protected conduct] one of his First Amendment claim. [Doc. 98, PageID# 1180].

The R&R also found that Plaintiff created a genuine issue of material fact as to the second element of his First Amendment claim. *Id*. The R&R alleges that Plaintiff established the second element through his self-serving verified statement that Defendant Crank's conduct report, without corroborating evidence, was false. *Id*. Here, the Court relies on *Smith v. Craven* to support the contention that "false disciplinary reports" are "adverse action that could deter a person of ordinary firmness from engaging in protected conduct." *Id*.; *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003). However, Defendant Crank disagrees with the R&R's interpretation of *Smith*. The R&R seems to suggest that the mere allegation of false disciplinary reports establishes a genuine issue of material fact. *Smith* is distinguishable for several reasons. First, the Sixth Circuit was reviewing the dismissal of Smith's retaliation claims at the screening phase of the case pursuant to 28 U.S.C. §1915(e). *Smith* at 160. Second, Smith's retaliation claim was remanded to the district

court to determine whether he fully exhausted this claim at the administrative level. *Id*. at 163. Finally, Smith did more than merely assert the adverse action of his retaliation claim was a falsified conduct report, he affirmatively pled that the institution itself found that conduct report was actually false by stating, "the disciplinaries were modified by the TDOC and any and all sanctions were removed." *Id*. at 162. The *Smith* Court found that the conduct report was indeed false, because "[t]he subsequent return of his property indicated that the property had been wrongfully seized." *Id*.

No such evidence appears in the record in the instant case. In fact, the record in this case proves that the conduct report issued by Defendant Crank was affirmed. [Doc. 89-3]. Plaintiff appealed the hearing officer's report that contraband was found in his cell. [*Id*. at 1034]. There was independent evidence that the contraband found in Plaintiff's cell was consistent with illegal drugs known as spice/K2. [*Id*. at 1032]. Further, Plaintiff's appeal was denied, and his conviction was upheld by ODRC Legal Services. [*Id*. at 1036]. The evidence before the Court at the summary judgement stage of this matter, demonstrates that he violated a legitimate prison regulation and Defendant Crank's single cell search was not adverse action because the conduct report was not falsified. The R&R reliance on *Smith v. Craven* is misplaced and summary judgment should be granted in Defendant Crank's favor.

**B. The Report and Recommendation is "Contrary to Law" as it misapplied prior precedent when evaluating Plaintiff's Eighth Amendment Excessive Force Claim Against Defendants Stevenson, Justice, Jewell and Wellman**

"Whenever a prison official is accused of using excessive physical force in violation of the Eighth Amendment, 'the core judicial inquiry' to determine if there was unnecessary and wanton infliction of pain is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *U.S. v. Bunke*, 412 Fed.Appx. 760, 765

(6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). In making this inquiry, a court must consider: (1) the need for the use of force, (2) the relationship between the need and the type and amount of the force used, (3) the threat perceived by the officials, (4) and the extent of the injury inflicted. See *Hudson*, 503 U.S. at 7.

As to the objective element of Plaintiff's excessive force claim, the R&R relied on *Wilkins* and *Hudson* to support the contention that Plaintiff's injuries as described by Plaintiff, created a genuine issue of material fact. [Doc. 98, PageID# 1188]. The R&R's reliance on these cases is misplaced. In *Wilkins*, the Supreme Court remanded the District Court's dismissal of the case for failure to state a claim and, "express[ed] no view on the underlying merit of [Wilkins'] excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010). In *Hudson*, the Magistrate Judge found that in addition to bruises and swelling, the unprovoked attack, "loosened Hudon's teeth and cracked his partial dental plate, rendering it unusable for several months." *Hudson v. McMillian*, 503 U.S. 1, 4 (1992).

*Wilkins* is distinguishable from the instant case because the Supreme Court was analyzing the case from a procedural perspective and made no determination on the merits of the excessive force claim. *Wilkins* at 40. Likewise, the injuries demonstrated in *Hudson*, are objectively different than the injuries allegedly sustained by Plaintiff in this case. The R&R agrees with the Defendants that Plaintiff's injuries were not significant. When granting summary judgment for Defendant Sammons on the Eighth Amendment deliberate indifference claim alleged against him, the R&R found that the "plaintiff has failed to raise a genuine issue of material fact that he has suffered a sufficiently serious injury." [Doc. 98, PageID# 1192-93].

Another factor that distinguishes this case from *Wilkins* and *Hudson* is that Defendants applied force "in good faith in pursuit of valid penological or institutional goals." *Parrish v.*

*Johnson*, 800 F.2d 600, 604 (6th Cir.1986). If Defendants applied the force for a valid penological interest, then they likely did not violate the Eighth Amendment. *Id.* The subjective component of an Eighth Amendment violation focuses on the state of mind of prison officials and requires an examination of whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The Eighth Amendment analysis must also take into account the prison setting and avoid subjecting prison officials to an "unreasonable post hoc judicial second-guessing." *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citing *Parrish v. Johnson*, 800 F.2d 600, 605 (6th Cir.1986)). The question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-321,106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In order to establish liability under the Eighth Amendment, an inmate must prove "more than ordinary lack of due care for the prisoner's interests of safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319).

Defendants Stevenson, Justice, Jewell and Wellman were part of a cell extraction team assigned to remove the combative and uncooperative Plaintiff from his constant watch cell. Here, a valid penological interest existed. Moreover, it took Defendants only one hundred and forty-eight (148) seconds to secure Plaintiff in restraints and escort him out of the constant watch cell. [Defendants' MSJ Exhibit 6, time stamp 2:08-4:36]. The R&R suggests Plaintiff's verified complaint creates a genuine issue of material fact as to the subjective component of his Eighth Amendment claim because he was "already turned around waiting to be cuffed and shackled." [Doc. 98, PageID# 1188]. Even if Plaintiff's version of the extraction is true, it cannot create a genuine issue of material fact because it cannot prevail over any "inadvertence or error in good

faith." *Wilson* at 299. The objectively short time- period Defendants used force to extract Plaintiff from his cell, illustrates no malice occurred and summary judgment should be granted in their favor.

### C. Defendants are Entitled to Qualified Immunity

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison v. Bd. of Trs. of Green. Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (quoting *Anderson v. Creighton¸* 483 U.S. 635, 640 (1987)). This prong of the qualified immunity analysis requires the court to determine whether "existing precedent placed the conclusion" that the defendant violated the constitution under the circumstances "beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 14 (2015) (internal citation omitted). Courts may examine the qualified immunity prongs in either order, and a failure to satisfy either prong is fatal to the plaintiff's claims. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

The R&R denied Defendant Crank qualified immunity because the right was "clearly established for purposes of qualified immunity" because Plaintiff's unfounded accusation of Defendant's Crank's conduct report being false. [Doc. 98, PageID# 1194]. The R&R relies on *Scott v. Stone* to support its contention that "a false major misconduct ticket, against the exercise of his First Amendment rights' is clearly established for purposes of qualified immunity." *Id*.; *Scott v. Stone*, 254 F. App'x 469, 475 (6th Cir. 2007) (quoting *Scott v. Churchill,* 377 F.3d 565, 571-72 (6th Cir. 2004)). In *Scott*, the Court relied on evidence in the record that the institution itself found the conduct reports false because the institution dismissed the charges. *Scott* at 471. Here, Plaintiff appealed Defendant Crank's conduct report for having spice/K2 in his cell and the conduct report was upheld at every level. [Doc. 89-3]. Because Defendant Crank's conduct report was not false

he is entitled to qualified immunity.

Similarly, the R&R denied Defendants Justice, Stevenson, Wellman and Jewell qualified immunity based on allegations of conduct *after* Plaintiff was subdued. [Doc. 98, PageID# 1195]. The R&R cites to Plaintiff's self-serving statements as evidence to establish that Defendants' conduct violated clearly established law. *Id*. However, once the issue of qualified immunity was raised by Defendants Justice Stevenson, Wellman and Jewell the burden switched to Plaintiff to establish they are not entitled to qualified immunity. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). Here, Plaintiff failed to meet that burden. Although Plaintiff claims that he was compliant with orders once the extraction team was ordered into the cell, this is inconsistent with his previous pattern of non-compliance. [Defendants' MSJ Exhibit 6]. Plaintiff identifies Defendants Justice, Stevenson, Wellman and Jewell using force on him during the cell extraction and claims that force was applied after he was cuffed; however, Plaintiff never indicated that force was applied after he was shackled.

Ohio Administrative Code 5120-9-05(C)(1) defines "Immobilizing security restraint" to include "leg irons or belly chain in the transport or movement of the inmate." The record in this case reflects that Defendant Stevenson applied the handcuffs and Defendant Justice applied the leg irons. [Doc. 89-4, PageID# 1058]. Plaintiff's verified amended complaint states, "plaintiff laid flat on the cell floor on his stomach and was cuffed" then he begins to describe how Defendants continued using force. [Doc. 5, PageID# 93]. The R&R took this statement as creating a genuine issue of material fact because excessive force was used after the Plaintiff was subdued. [Doc. 98, PageID# 1195]. Critically, Plaintiff never indicated he was secured in leg irons and thus immobilized for transport pursuant to Ohio Administrative Code 5120-9-05(C)(1). It may very well be true that force was applied to Plaintiff after he was cuffed; however, he was not shackled

and not subdued for transport pursuant to the Ohio Administrative Code. Therefore, Plaintiff failed to carry his burden that Defendants Justice, Stevenson, Wellman and Jewell are not entitled to qualified immunity and summary judgment should be granted in their favor.

## III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the District Court decline to partially adopt the Magistrate Judge's Report as it pertains to Plaintiff's retaliation claim against Defendant Crank and his excessive force claim against Defendants Justice, Stevenson, Wellman and Jewell. Defendants further respectfully request that the District Court grant summary judgment in their favor and dismiss the case.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/**Andrew Gatti***
ANDREW GATTI (0086854)
Senior Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233 / (855) 665-2568
Andrew.Gatti@OhioAGO.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Defendants' Objections to the Magistrate Judge's Report and Recommendation [Doc. 98],* has been electronically filed on November 6, 2024, and served upon Plaintiff via U.S. mail, postage prepaid at the below address.

Terrance Feaster, #A551-840
Southern Ohio Correctional Facility
P.O. Box 45699
Lucasville, OH 45699

/s/***Andrew Gatti***
ANDREW GATTI
Senior Assistant Attorney General